**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 22-cv-1141-WJM-JPO

MELISSA GAMBOA, on her own behalf and on behalf of all others similarly situated,

    Plaintiff,

v.

KISS NUTRACEUTICALS,
KISS INDUSTRIES, LLC,
COLE EVANS, and
GRANT DEAN,

    Defendants.

**ORDER SUSTAINING PLAINTIFFS' OBJECTIONS TO
MAGISTRATE JUDGE'S MINUTE ORDER PERMITTING
DEPOSITIONS OF COUNSEL AND PUBLIC OFFICIAL**

Before the Court is Plaintiffs' Objection[s] to Magistrate Judge's Minute Order Permitting Depositions of Counsel and Public Official ("Objection(s)").  (ECF No. 109.) Defendants Kiss Nutraceuticals, Kiss Industries, LLC, Cole Evans, and Grant Dean (collectively, "Defendants") filed a response.  (ECF No. 114.)  For the following reasons, the Objections are sustained.

**I. RULE 72(A) STANDARD**

"Discovery is a nondispositive matter . . . ." *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997).  When reviewing an objection to a magistrate judge's non-dispositive ruling, the Court must affirm the ruling unless it finds that the ruling is "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Ariza v.*

*U.S. West Commc'ns, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996).  The clearly erroneous standard "requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (internal quotation marks omitted).  The "contrary to law" standard permits "plenary review as to matters of law," see 12 Charles Alan Wright et al., Federal Practice & Procedure § 3069 (2d ed., Apr. 2016 update), but the Court will set aside a magistrate judge's order only if it applied the wrong legal standard or applied the appropriate legal standard incorrectly, *see Wyoming v. U.S. Dep't of Agric.*, 239 F. Supp. 2d 1219, 1236 (D. Wyo. 2002).  In short, "[b]ecause a magistrate judge is afforded broad discretion in the resolution of non-dispositive . . . disputes, the court will overrule the magistrate judge's determination only if his discretion is abused."  *Ariza*, 167 F.R.D. at 133.

## II. BACKGROUND

Plaintiffs object to Magistrate Judge James P. O'Hara's Order ("Discovery Order") (ECF No. 108) finding good cause to modify the Phase I Scheduling Order and permitting Defendants to take further class certification discovery through, *inter alia*, the depositions of Plaintiffs' counsel (Mr. Brandt Milstein and Mr. Andrew Turner), opt-in Plaintiff Maria Hernandez, and Denver Labor Executive Director Matthew Fritz-Mauer.[1]  In significant part, the parties' disagreement as to whether additional class certification discovery is necessary turns on, as Magistrate Judge O'Hara put it, the parties' "radically different views" of certain events taking place on (and in the months leading

---

[1] Magistrate Judge O'Hara also *sua sponte* granted Plaintiff leave to depose individual Defendant Cole Evans.  (ECF No. 108.)

2

up to) January 6, 2024 (the "January Event").  (ECF No. 108.)

The Court first briefly summarizes the procedural backdrop for the January Event.  Named Plaintiff Melissa Gamboa (a former employee of Defendants) filed this class and collective action on behalf of herself and all others similarly situated in May 2022, asserting violations of federal and state law based on Defendants' alleged "refus[al] to pay their employees overtime premiums for overtime hours worked."  (ECF No. 1 at ¶¶ 2-7.)  Shortly after the litigation began, then-Magistrate Judge S. Kato Crews entered a Scheduling Order providing for bifurcated discovery.  (ECF No. 25.)  Pursuant to that Order, Phase I of the litigation would be directed to class certification issues, with discovery concluding on that topic on February 1, 2023.  (*Id*. at 5.)  Plaintiff ultimately filed her Rule 23 Motion for Class Certification ("Class Certification Motion") in August 2023 (ECF No. 50), suggesting the parties had—as of that time—completed all discovery necessary to fully brief class certification.[2]  On the same date, this Court granted Plaintiff's Renewed Motion for Conditional Collective Action Certification (ECF No. 30), thereby approving the Notice and Consent to Join form appended thereto and authorizing a 60-day opt-in period from the date Plaintiff disseminated the Notice.  (ECF No. 52.)

On Defendants' September 2023 deadline to respond to the Class Certification Motion, the parties instead jointly requested a settlement conference and a stay of all proceedings pending the same.  (*See* ECF Nos. 54-56.)  As a result of the subsequent

---

[2] The parties had previously been granted extensions to brief class certification due to their ongoing efforts "to set and take depositions required for informed briefing of the Class Certification issue."  (ECF No. 46 at ¶ 2; *see also* ECF No. 38.)

3

stay, briefing on the Class Certification Motion was suspended.  (ECF No. 65.)  It is during this time, when the litigation was stayed and briefing on class certification remained incomplete, that the January Event occurred:

According to Plaintiffs, Plaintiffs' counsel began "receiv[ing] complaints from Defendants' then-current employees of new and distinct wage violations" in September 2023 relating to "complete non-payment [of wages]," as opposed to the non-payment of overtime claims pending in this lawsuit.  (ECF No. 109 at 3.)  Plaintiffs' "[c]ounsel decided these complaints would be most expeditiously addressed outside this case" and instead lodged "a complaint regarding the 2023 non-payment issue to Denver Labor," a division of the Denver Auditor's Office.  (*Id.*)  Plaintiffs aver that their counsel then realized the pending investigation may qualify Defendants' eligible employees for immigration benefits through the Deferred Action for Labor Enforcement ("DALE") program.  (*Id.*)  The U.S. Department of Homeland Security accepted the necessary "Statement of Interest" from Denver Labor around the end of October, rendering Defendants' workers eligible to apply for deferred action.  (*Id.*)  Plaintiffs state the Fair Labor Standards Act ("FLSA") opt-in period for this litigation closed on November 11, 2023.  (*Id.* at 2 (citing ECF No. 99-1 at ¶ 3).).

Shortly thereafter, and at the suggestion of a lawyer at Colorado Legal Services, Plaintiffs state their counsel began working with volunteer lawyers from various organizations to facilitate a "*pro bono* immigration clinic at which volunteers could process [DALE] applications *en masse*."  (*Id.*)  Plaintiffs' counsel "worked with volunteer immigration counsel to draft . . . two fliers . . . announc[ing] the January 6th[, 2024] *pro bono* clinic," which were disseminated in December 2023 by a third party, including to

"the full list of addresses Defendant had disclosed in this litigation." (ECF No. 109 at 4–5.)

On the day of the clinic, Plaintiffs allege individual Defendant Cole Evans (founder and CEO and owner of Kiss Nutraceuticals (ECF No. 104-1 at ¶ 2)) "arrived and interrupted the clinic" just "[a]s applicants gathered and volunteers prepared stations." (ECF No. 109 at 5.) Plaintiffs state that Evans "was observed taking photographs or video of the workers in attendance," leading "[f]rightened workers" to alert volunteer lawyers of his presence. (ECF No. 109 at 5.) Plaintiffs claim their counsel attempted, unsuccessfully, to contact defense counsel (who had withdrawn from the case a few days before (ECF Nos. 70-72)) to address the situation with her client directly. (*Id.*) Unable to reach her, however, "Plaintiffs' counsel Brandt Milstein walked Mr. Evans to the hallway where they spoke with Denver Labor Executive Director Matthew Fritz-Mauer and Plaintiffs' counsel Andrew Turner." (ECF No. 109 at 5.) According to Plaintiffs, "Evans refused to leave the premises until he was informed that law enforcement had been summoned." (ECF No. 109 at 5.)

According to Defendants, Evans received copies of the fliers "days before the January 6th Event." (ECF No. 114 at 4 (citing ECF No. 104-1 at ¶ 7).) Defendants claim they lacked any knowledge of the planning of the January Event prior to that time, but the fliers advertising the January Event "had an obvious but undisclosed connection to this lawsuit." (ECF No. 114 at 4 (citing ECF No. 104-1 at ¶¶ 8-11).) As a result, Evans, "proceeding *pro se*," "went to the Event to learn if Plaintiffs' counsel had organized it to recruit collective or class action members with the coercive promise of facilitating work permits." (ECF No. 114 at 4.) Defendants assert that "[l]ess than a

5

minute after arriving, Plaintiffs' counsel Brandt Milstein, . . . along with co-counsel Andrew Turner and Denver Labor's Executive Director Matthew Fritz-Mauer, began berating Mr. Evans with threats of criminal trespass, civil fines, and attorney-client interference."  (ECF No. 114 at 5 (citing ECF No. 104-1 at ¶¶ 12-20).)[3]  Both parties refer the Court to videos depicting at least part of the interaction between Plaintiffs' counsel, Mr. Fritz-Mauer, and Evans that have been filed with the Court.  (ECF No. 109 at 5 (citing ECF Nos. 78, 91-2); ECF No. 114 at 5 (citing ECF No. 93).)

In the days following the January Event, Plaintiffs moved to lift the stay of the litigation (ECF Nos. 74-75) and for leave to file an amended complaint (ECF Nos. 76-78) setting forth new retaliation claims based on "Evans'[s] conduct on January 6, 2024."  (ECF No. 76 at ¶ 21.)  The retaliation claims were asserted on behalf of named plaintiff Melissa Gamboa and opt-in plaintiff Maria Hernandez, who Plaintiffs allege "was among those workers present at the January 6, 2024 pro bono clinic when Defendant Evans interrupted it," in their individual capacities.  (*Id.* at ¶ 19.)

Defendants retained new counsel in early February, after which Defendants indicated their non-opposition to lifting the stay and Plaintiffs' filing of the proposed amended complaint.  (ECF Nos. 84-87.)  However, the parties indicated in a joint status report that they "dispute[d] whether to re-open class discovery."  (ECF No. 86 at 2.)

---

[3] Defendants also claim that "Plaintiffs' counsel, Brandt Milstein, shoved Defendant Evans against a wall."  (ECF No. 114 at 5.)  Plaintiffs vehemently contest this.  (*See* ECF No. 109 at 6-7.)  In any case, Defendants proceed to state: "Mr. Milstein's assault is the most notable factual dispute and Plaintiffs do not contend that a resolution to this disputed fact is relevant to whether Mr. Milstein can represent a potential class."  (ECF No. 114 at 5 n.2.)  Accordingly, as Defendants appear to have conceded its irrelevance, the Court disregards this assertion in considering Plaintiffs' Objections.

Based upon this representation, the Court denied Plaintiff's still-pending Class Certification Motion without prejudice to refiling "once the parties determine whether class discovery should be reopened." (ECF No. 89.)

Defendants filed their Motion to Amend Phase I Scheduling Order in March 2024. (ECF No. 91.) They aver that further class certification discovery is necessary "to learn what took place during Plaintiffs counsels' suspicious meeting with potential class members . . . ." (ECF No. 114 at 3.) Defendants speculate that

> the true reason for convening the meeting very well may be due to the overwhelming lack of interest from the putative class in pursuing the[] claims, as only four individuals opted into the FLSA collective. Obviously frustrated, Plaintiffs' counsel likely wanted to do everything possible to spread the word about a potential Rule 23 class by any means necessary.

(ECF No. 114 at 3.) Moreover, Defendants sought "discovery into the typicality and adequacy prerequisites of class certification" and "ascertainability of potential class members," asserting "that evidence of Plaintiff Melissa Gamboa's [alleged] wage fraud was revealed after the phase I discovery deadline" and they "recent[ly] discover[ed] that many KISS workers provided false names, making their identities and current locations unknowable." (ECF No. 114 at 5.) Plaintiffs maintain the January Event "concerned only immigration" and that "[n]o solicitation for nor investigation of this occurred." (ECF No. 109 at 6.)

Ultimately, Magistrate Judge O'Hara granted Defendants' request to reopen class certification discovery, permitting:

- Defendants to "depose attorneys Brandt Milstein and Andrew Turner, opt-in plaintiff Maria Hernandez, and Denver Labor Executive Director Matthew Fritz-Mauer," and, on its own motion, "plaintiff . . . to depose defendant Cole Evans," for 2 hours each and ("[e]xcept for the deposition

7

of plaintiff") on topics limited to "facts surrounding the planning and holding of the January 6 meeting"; and

- Defendants to "serve plaintiff with 5 document requests on each of the following 3 subjects: the January 6 meeting; over-reporting of hours while plaintiff was employed by KISS (as mentioned during her prior deposition); and the ascertainability of potential class members."

(ECF No. 108.)

## III. ANALYSIS

Plaintiffs' specific objections to the Discovery Order are four-fold: (1) "the Magistrate Judge erred in concluding that Defendants had demonstrated good cause to re-open class certification discovery to take depositions and documentary discovery from Plaintiffs' counsel" insofar as Magistrate Judge O'Hara found "the depositions ordered 'will develop evidence relevant to . . . whether [Plaintiffs'] current counsel could represent the class'" (ECF No. 109 at 8 (citing ECF No. 108)); (2) "[t]he Magistrate Judge erred . . . by failing to apply the *Shelton* test or analyze any of its factors" (ECF No. 109 at 9); (3) the Discovery Order was "clearly erroneous in holding that 'the requested discovery will develop evidence relevant to whether plaintiff would be an adequate class representative'" (ECF No. 109 at 10 (citing ECF No. 108)); and (4) "[t]he Magistrate Judge . . . erred by ordering documentary discovery which Defendants have now utilized to seek the production of counsel's files containing the names of all Kiss workers who . . . attend[ed] the immigration clinic" (ECF No. 109 at 10). The Court addresses each objection in turn.

### A.  Relevance of the Ordered Depositions

Plaintiffs first object to the Discovery Order on the grounds that

> [t]he Magistrate Judge erred in concluding that Defendants had demonstrated good cause to re-open class certification

8

> discovery to take depositions and documentary discovery from Plaintiffs' counsel, whether the 'entire evidence' weighs the uncorroborated word of one young man with a false statements citation and a penchant for filing police reports against the video record and the sworn statements of seven reputable officers of this Court.

(ECF No. 109 at 8.) Plaintiffs' Objection in this regard appears to take particular issue with Magistrate Judge O'Hara's finding "that the depositions ordered 'will develop evidence relevant to . . . whether [Plaintiffs'] current counsel could represent the class.'" (ECF No. 109 at 8 (quoting ECF No. 108)); *see also Smith,* 834 F.2d at 169 (enumerating "the likelihood that the discovery will lead to relevant evidence" as the sixth factor courts consider when determining whether to reopen discovery).

Plaintiffs contend that "[t]he class certification inquiry does not . . . permit the deposition of putative class counsel." (ECF No. 109 at 8.) As further support, Plaintiffs state their "[c]ounsel finds no precedent from any jurisdiction ever having permitted the deposition of putative class counsel predicate to certification." (*Id.*) The Court, too, is wholly unconvinced that the depositions ordered are likely to elicit evidence relevant to the Court's assessment of whether Plaintiffs' counsel is adequate to represent the class under Rule 23(g).

Defendants nonetheless argue that they are entitled to "test the veracity of Plaintiffs' narrative [of the January Event] through depositions and written discovery to resolve inconsistencies" predicate to class certification. (ECF No. 114 at 7.) As one example of a purported "glaring inconsistency that speaks directly to the adequacy of class counsel," Defendants assert that "Plaintiffs' counsel repeatedly claimed that Mr. Evans was interfering with an 'attorney-client' meeting during their confrontation at the [January Event] (as seen in the video at Exhibit B to Defendants' Motion [ECF #93] at

9

3:41, 5:00, 5:08, 5:33) but Plaintiffs now claim in Court submissions that no client solicitation or recruitment took place." (*Id.*)  Defendants liken this to *Stransky v. HealthONE of Denver, Inc.,* 929 F. Supp. 2d 1100 (D. Colo. 2013), in which, according to Defendants, "this same Court . . . previously considered testimony and other evidence to determine whether unilateral attorney communications with putative class members was misleading, confusing, coercive, or improper."  (ECF No. 114 at 8.)

In *Stransky,* the Court heard plaintiff's motion for sanctions and motion for injunctive relief and for contempt after plaintiff "discover[ed] that [d]efendant had held staff meetings with prospective Opt-in Plaintiffs in which the litigation was discussed in an allegedly misleading and intimidating way," in contravention with a prior *express order* of the Court directing that "in-person meetings with Opt-in Plaintiffs . . . [would] not be allowed."  929 F. Supp. 2d at 1104, 1107 (internal quotations omitted).

Notwithstanding the fact that Defendants fail to point to any explicit order of the Court restricting communications between Plaintiffs' counsel and potential class members they allege has been violated, the Court in *Stransky* did not undertake any analysis of the adequacy of class counsel pursuant to Rule 23(g).  Indeed, the case did not even concern the conduct of Plaintiffs' counsel, and Defendants point the Court to no case where the remedy for allegedly improper communications between Plaintiffs' counsel and potential putative class members—even assuming that characterization to be true here—is the wholesale disqualification of proposed class counsel.  Accordingly, the Court finds Defendants' reliance on this case to be unpersuasive.[4]

---

[4]  Defendants' counsel are advised the Court takes a particularly dim view of their attempt to weaponize the discovery process in this case by seeking leave, in these circumstances, to make use of the highly-disfavored discovery weapon of deposing opposing

Because the Court finds that the depositions ordered related to the January Event are highly unlikely to elicit evidence relevant to the adequacy of class counsel, the Court also finds the *Smith* factors weigh against finding good cause to reopen class certification discovery to depose Plaintiffs' counsel.  *See Watson v. Norton,* 10 Fed. Appx. 669, 676-77 (10th Cir. 2001) (affirming district court's refusal to reopen discovery based on finding the requested deposition would not elicit relevant testimony).

In this regard, Magistrate Judge O'Hara's Discovery Order was clearly erroneous, and Plaintiffs' Objection is sustained.  Moreover, although Plaintiffs' Objection appears to be confined to the depositions of Plaintiffs' counsel, the Court finds this conclusion must also logically extend to the ordered depositions of Denver Labor Executive Matthew Fritz-Mauer, opt-in Plaintiff Maria Hernandez, and Defendant Cole Evans as to the January Event.

### B. Application of the *Shelton* Test

Plaintiffs further contend that "[t]he Magistrate Judge erred in this case by failing to apply the *Shelton* test or analyze any of its factors."  (ECF No. 109 at 9.)  The *Shelton* test, adopted by the Tenth Circuit in *Boughton v. Cotter Corp.*, 65 F.3d 823, 829 (10th Cir. 1995), governs the analysis of depositions of opposing counsel.  It prescribes:

> [D]epositions of opposing counsel should be limited to where the party seeking to take the deposition has shown that: (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial

---

counsel.  This state of affairs is rendered even more objectionable by the fact that nowhere in their briefing on the instant Motion does defense counsel even acknowledge that the entire January Event took place only because it was their client who took the extraordinarily inappropriate step of interjecting himself into a meeting of putative class members and possible prospective new counsel.

11

      to the preparation of the case.

*Boughton,* 65 F.3d at 829 (citing *Shelton v. Am. Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir. 1986)).  As the Court has already sustained Plaintiffs' Objection to the ordered depositions on relevance grounds, the Court also sustains this portion of Plaintiffs' Objections.

      Moreover, the Court expects this issue to re-surface when the parties reach merits discovery on Plaintiffs' retaliation claims.  The Court cautions Defendants that it is at present wholly unpersuaded that "no other means exist to obtain the information [related to the January Event] than to depose opposing counsel."  *Id*.  Defendants are reminded of their obligation to "make a reasonable effort to seek information from the [other] sources they cho[o]se to pursue" before resorting to noticing the depositions of opposing counsel.  *Boughton,* 65 F.3d at 831.

      **C.**    **Deposition of Opt-In Plaintiff Maria Hernandez as to Adequacy**

      Plaintiffs argue that "[t]he Magistrate Judge's Order was also clearly erroneous in holding that 'the requested discovery will develop evidence relevant to whether plaintiff would be an adequate class representative.'"  (ECF No. 109 at 10 (quoting ECF No. 108).)  Plaintiffs expound: "The Magistrate Judge has not ordered the deposition of putative class representative Melissa Gamboa, who was not present at nor involved in the January 6th clinic.  He has Ordered the deposition of Maria Hernandez, who *is not* a putative class representative."  (ECF No. 109 at 10.)  Defendants respond they "never sought to depose Plaintiff Gamboa in their Motion and, in an effort to minimize the requested discovery, only sought written discovery on the issue of her adequacy as the class representative."  (ECF No. 114 at 9.)

12

To the extent the Discovery Order may be read to permit the deposition of opt-in Plaintiff Maria Hernandez to proceed on topics *other than* the January Event, Plaintiffs' Objection is sustained.  Plaintiffs do not, however, appear to object as to the portion of the Discovery Order permitting Defendants to propound written discovery to named Plaintiff Melissa Gamboa on "over-reporting of hours while plaintiff was employed by KISS (as mentioned during her prior deposition)" and "the ascertainability of potential class members."  (ECF No. 108.)  Thus, for the sake of clarity, Defendants will still be permitted to serve written discovery on named Plaintiff Melissa Gamboa as to those topics only.

### D. Documentary Discovery Related to the January Event

Finally, Plaintiffs contend that "[t]he Magistrate Judge erred by ordering documentary discovery which Defendants have now utilized to seek the production of counsel's files containing the names of all Kiss workers who dared attend the immigration clinic."  (ECF No. 109 at 10.)  For the same reasons outlined in Section III.A above, the Court finds the portion of the Discovery Order permitting Defendants to propound document requests related to the January Event to be clearly erroneous.  In that respect, Plaintiffs' Objection is also sustained.

### IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiffs' Objections (ECF No. 109) are SUSTAINED in their entirety;
2. Given that there is no objection to Defendants' request for documentary discovery on topics other than the January Event, Defendants are DIRECTED, **within 5 days of this Order**, to serve amended document requests to named

13

    Plaintiff Melissa Gamboa limited to 5 document requests on each of the following subjects: (1) the over-reporting of hours while plaintiff was employed by KISS and (2) the ascertainability of potential class members;

3. Plaintiffs shall file their Renewed Motion for Class Certification by no later than **October 9, 2024;** Defendants' response to said Renewed Motion shall be due no later than **October 23, 2024;** and Plaintiffs' Reply will be due no later than **October 30, 2024;** and

4. Within **5 business days** of the date soon-to-be Magistrate Judge Timothy P. O'Hara assumes the bench of this Court and is assigned the duties of the Magistrate Judge in the referral role in this action, the parties are DIRECTED to jointly contact his Chambers to set a Status Conference, or such other proceeding as Judge Timothy P. O'Hara deems appropriate, to address without limitation the entry of a Phase II Scheduling Order in this action.

Dated this 23rd day of September, 2024.

                                              BY THE COURT:

                                              William J. Martinez
                                              Senior United States District Judge