IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 22-cv-01141-WJM-JPO

MELISSA GAMBOA on her own behalf
and on behalf of all others similarly situated,

    Plaintiff,

v.

KISS NUTRACEUTICALS,
KISS INDUSTRIES, LLC,
COLE EVANS and
GRANT DEAN,

    Defendants.

_____

**RENEWED MOTION FOR CLASS CERTIFICATION[1]**
_____

    COMES NOW putative class representative Melissa Gamboa to respectfully move the Court for an order certifying this case as a class action pursuant to Fed.R.Civ.P. 23. Plaintiff and all members of the proposed class were low-wage assembly line workers employed in Defendants' cannabidiol ("CBD") gummy manufacturing operation. Defendants misclassified their employees as independent contractors and, as a result, refused to pay them overtime wages. Plaintiff seeks to recover unpaid overtime wages and penalties on her own behalf and on behalf of her similarly situated co-workers.

---

[1] Per D.C.COLO.LCivR 7.1(a), Plaintiff's counsel conferred with counsel for Defendants regarding the propriety of class treatment in the case. Defendants oppose the Motion.

## I. Statement of the Case

Defendants are in the business of manufacturing CDB gummy bears, among other products.[2] In Defendants' plant, workers perform basic assembly line tasks, including arranging gummy bears on trays, placing drops of CBD oil on the gummy bears, and packing them for shipment. Pl. Ex. 1, Soto Dep. 33:8-13; Pl. Ex. 2, Lara Dep. 35:5-10; Pl. Ex. 3, Gamboa Dep. 22:10-23:20. Defendants paid their unskilled, largely immigrant and female workforce hourly wages. Pl. Ex. 4, <u>February 2021 Master Payroll</u>. Defendants admit that they never paid overtime wages to any of the putative class members. Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 64:1-17; Pl. Ex. 10, *see also* <u>Declaration of Barbara Olvera</u> ¶ 4. Defendants have complete records of all putative class members' hours worked and wages paid, and those records confirm that the putative class members regularly worked overtime hours and were denied overtime pay. Pl. Ex. 6, <u>Defendants' Wage and Hour Records</u>; Pl. Ex. 10, <u>Declaration of Barbara Olvera</u> ¶ 5. Rather than pay overtime wages, Defendants implemented a uniform practice of misclassifying **all** their hourly assembly line workers as "independent contractors" who Defendants claim were not entitled to overtime pay. Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 82:18-83:10.

Plaintiff proceeds under the Fair Labor Standards Act, the Colorado Minimum Wage Act, the Colorado Wage Claim Act, and the Denver Minimum Wage Ordinance. ECF No. 1. Plaintiff seeks Rule 23 class certification of her state and local wage claims.

Plaintiff bears the "strict" burden of proving each of Rule 23's requirements. *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988). Plaintiff must establish each of the four requirements set forth in Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses

---

[2] See https://www.kissnutraceuticals.com/about-kiss accessed July 31, 2023.

of the representative plaintiff are typical of the claims or defenses of the class; and (4) the representative plaintiff will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Plaintiff must also establish one of the three elements of Rule 23(b).

The decision whether to grant or deny class certification involves intensely practical considerations and therefore belongs within the discretion of the trial court. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1227 (10th Cir. 2013). A certified class may be altered, expanded, subdivided, or abandoned as the case develops. *Daigle v. Shell Oil Co.*, 133 F.R.D. 600 (D. Colo. 1990). Given this flexibility, any doubts about certifying a class action should be resolved in favor of certifying the class. *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968) ("[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.").

## II. The Independent Contractor Misclassification Issue Can Be Resolved on a Class-Wide Basis

Pursuant to the Colorado Minimum Wage Act and the Colorado Wage Claim Act, whether workers are employees or independent contractors depends on the degree of control the employers could have or did exercise over them and the degree to which the workers perform work that is the primary work of the employers; except that workers primarily free from control and direction in the performance of the service, both under any contract for the performance of service and in fact, and who are customarily engaged in an independent trade, occupation, profession, or business related to the service performed are not "employees". C.R.S. 8-4-101(5).

Similarly, per Denver's Minimum Wage Ordinance, these workers were employees and not independent contractors if they were economically dependent on Defendants. D.R.M.C. Ch. 58, § 38-51.9(b)(3). Independent contractors, on the other hand, must be, as a matter of economic fact, in business for themselves. *Id.*

Under Denver's Ordinance, courts query whether (a) the Defendants could have or did exert a degree of control over the workers, such as setting working hours, controlling break and lunch times, or directing the workers when and where to work; (b) the workers earned a set hourly wage; (c) the workers worked exclusively for the Defendants, and did not provide similar services to other employers; **or** (d) the workers did not bring a level of skill and knowledge unique to the job, but rather the employer provides on-the-job training for the work to be done. D.R.M.C. Ch. 58, § 38-51.9(b)(3) (emphasis added).

"We generally understand an independent contractor to be someone with a special skill (and with the bargaining power to negotiate a rate for the use of that skill), who serves multiple clients, performing discrete tasks for limited periods, while exercising great discretion over the way the work is actually done. Traditionally, an independent contractor is someone a principal might have found in the Yellow Pages to perform a task that the principal or the principal's own employees were unable to perform—often something tangential to the day-to-day operations of the principal's business… such as plumbing work, tax service, or the creation of a work of art for a building's lobby." *Cotter v. Lyft, Inc.,* 60 F. Supp. 3d 1067, 1069 (N.D. Cal. 2015) (internal quotations and citations omitted).

Defendants will argue that class certification is not appropriate here because determination of whether the putative class members were employees or independent contractors requires individualized analyses. But Defendants classified all the putative class members as independent contractors on a uniform basis, in one fell swoop. Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 82:18-83:10. Where employers implement a blanket policy of classifying workers as independent contractors, the question of the legality of the classification can be resolved on a class-wide basis. *Dalton v. Lee Publications, Inc*., 270 F.R.D. 555, 559 (S.D. Cal. 2010) ("There is one significant

issue common to the class sufficient to warrant certification. And that issue is the one central to this case: Whether Defendant improperly characterized Plaintiffs as independent contractors instead of employees."); *Golden v. Quality Life Servs., LLC*, CV 22-579 GJF/GBW, 2023 WL 3182645, at *6 (D.N.M. Apr. 30, 2023) ("Misclassification cases involving a policy categorically applied to the entire class typically present a common question because the central question of whether employees were wrongfully classified as exempt from overtime pay requirements unites them.").

In addition to the common policy question presented, this case is manageable on a class basis in the practical sense. The parties have access to complete records of all hours worked and all overtime wages unpaid for each member of the putative class. *See* Pl. Ex. 6, Defendants' Wage and Hour Records; Pl. Ex. 10, Declaration of Barbara Olvera ¶ 5. The putative class here is easily ascertainable and damages are a simple function of math given the parties' access to complete records of each class member's hours worked and wages paid.

Class treatment is particularly appropriate here where the misclassification is obvious and egregious, as is shown below. To permit an employer to defeat class liability by simply labeling hourly employees as independent contractors would defeat the purpose of the remedial wage statutes at issue. "To rule otherwise under the facts in this case would mean that any employer in an action for wages and overtime pay could attempt to defeat the commonality of a putative class's claims merely by classifying its employees in an exempt designation and raising an exemption defense against those employees…" *Niemiec v. Ann Bendick Realty*, 1:04-CV-00897-ENV-KAM, 2007 WL 5157027, at *10 (E.D.N.Y. Apr. 23, 2007).

## IV. Statement of Facts

The putative class members performed rote, manual, assembly line labor for the Defendants. Pl. Ex. 2, Lara Dep. 35:5-14; Pl. Ex. 3, Gamboa Dep. 22:15-17 (Job was arranging, cleaning, packing, and weighing products); Pl. Ex. 1, Soto Dep. 33:8-13 (Job was arranging gummies on trays, counting gummies, dropping CBD oil on gummies, and packing gummies into bottles).

Defendants directed the putative class members how to do the work. Pl. Ex. 2, Lara Dep. 54:1-12. In addition to supervisors' instructions, the putative class members' job duties were uniformly governed by Kiss's Standard Operating Procedures Nos. 02.002 Rev 02, 02.007 Rev 01, 02.011 Rev 01, 02.013 Rev 02, 03.004 Rev 01, 05.009 Rev 01, and 05.010 Rev 01. Pl. Ex. 7, filed as ECF# 60, Standard Operating Procedures.

Defendants admit that the work the putative class performed was the primary work of Defendants' business. Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 111:22-112:4. Defendants' business is to make and sell CBD-infused and other products. These plaintiff class manufactured and packaged these products. *Id.*

The job did not require specialized skills, training or certifications as would an independent contractor's work.[3] Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 111:3-21. Putative class member Lara did not graduate from high school and has no post-high school certificates or training of any kind. Pl. Ex. 2, Lara Dep. 10:20-11:5. Putative class member Soto has only a high school diploma, and no certifications of any kind. Pl. Ex. 1, Soto Dep. 12:16-23.

---

[3] "Routine work which requires industry and efficiency is not indicative of independence and nonemployee status. Further, skills that are not "specialized" but rather are "common" to all employees in that position counsel against [independent contractor] status." *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 385 (5th Cir. 2019).

The class did not bring a level of skill or knowledge unique to the job, but learned how to do the assembly line work by watching other workers arrange gummies on trays. Pl. Ex. 2, Lara Dep. 22:12-23. Putative class member Lara had never even done assembly-line work prior to working at Kiss. Pl. Ex. 2, Lara Dep. 35:20-22. When training was given, the putative members were able to train on-the-job in a very short time. Pl. Ex. 3, Gamboa Dep. 67:22-68:16; 75:14-76:2. Job training could last only a few minutes. Pl. Ex. 2, Lara Dep. 34:19-35:14; Pl. Ex. 1, Soto Dep. 35:17-36:15. The putative class members were all subject to Kiss's uniform Training Operating Procedure 01.002 Rev 02 (2.0). Pl. Ex. 7, filed as ECF# 60 <u>Standard Operating Procedures</u>. Defendants required the class to sign-off on the completion of training. Pl. Ex. 12, <u>Employee Training Sheets</u>.

To staff their assembly line, Defendants exercised the power to hire and fire the putative class members. Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 106:16-17; Pl. Ex. 2, Lara Dep. 19:15-21:7; 55:20-56:7; Pl. Ex. 1, Soto Dep. 69:23-25. The putative class members were all subject to Kiss's uniform Hiring Process Standard Operating Procedure 01.005 Rev 00. Pl. Ex. 7, filed as ECF# 60 <u>Standard Operating Procedures</u> ("This procedure applies to all new hires whether the status of their employment is that of a contractor or an employee."). Procedures 01.005 Rev 00 (3.1-3.4) controlled the process by which Kiss hired the class members. *Id.* Per Standard Operating Procedures 01.005 (1.3, 4.1 and 5.2), Kiss maintained hiring documents, personnel files, tax documentation and identification documents for all the putative class members. Pl. Ex. 13, <u>Hiring Documents</u>.

Defendants set the worker's schedules and made them come in early, and/or stay late, when there were orders to complete. Pl. Ex. 1, Soto Dep. 38:2-39:17. *See also* Pl. Ex 3, Gamboa Dep. 45:12-46:6; 71:4-25; Pl. Ex. 2, Lara Dep. 21:1-18; 25:6-23. Defendants controlled when the

workers could leave at the end of the day, and refused workers' requests to leave early. Pl. Ex 3, Gamboa Dep. 65:18-22; Pl. Ex 2, Lara Dep. 28:19-22; 51:18-52:12. Defendants directed their workers as to work start and stop work times via the WhatsApp messaging application. Ex 3, Gamboa Dep. 69:2-6; Ex. 2, Lara Dep. 25:14-16; Pl. Ex 1, Soto Dep. 22:8-20; Pl. Ex. 8, WhatsApp Message. If a worker didn't show up at the appointed time, Defendants punished them by cutting their shifts. Pl. Ex 1, Soto Dep. 22:8-20. Defendants subjected these purported independent contractors to employee discipline. Pl. Ex. 11, Employee Warning Document.

Defendants controlled when workers could take rest and lunch breaks. Pl. Ex. 1, Soto Dep. 71:20-25; Pl. Ex. 3, Gamboa Dep. 28:1-13; 93:6-18. Even if workers were permitted to take a break at a time of their choosing, Defendants cut their breaks short and made them go back to work. Pl. Ex. 3, Gamboa Dep. 93:25-95:12.

Defendants directed their employees as to where along the assembly line they were to work. Pl. Ex. 3, Gamboa Dep. 27:2-23. Defendants placed each worker in a position on the line according to which job Defendants wanted the worker to do each day, refused to let workers move among work stations, and punished workers when they moved themselves among work stations. Pl. Ex. 1, Soto Dep. 50:21-53:19; Pl. Ex. 2, Lara Dep. 23:23-24:19. Defendants made these purported independent contractors, who were allegedly running their own free-standing businesses, clean the bathrooms at the plant. Pl. Ex. 3, Gamboa Dep. 61:2-64:13.

Defendants paid the putative class members hourly wages and dictated what the wage rate would be. Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 105:19-106:2; Pl. Ex. 3, Gamboa Dep. 22:24-23:2; Pl. Ex. 1, Soto Dep. 62:20-22. Defendants did not pay the class members via a negotiated flat contract price for a distinct project, as an independent contractor might be paid.[4] *Id.*

---

[4] *Gray v. FedEx Ground Package Sys., Inc.*, 799 F.3d 995, 1002 (8th Cir. 2015) ("[T]he methods of paying employees and independent contractors are distinct. Independent contractors ... are paid a fixed sum on a by-the-job basis, and

The workers did not use equipment that they owned as a contractor would.[5] They performed all work on Defendants' manufacturing equipment. Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 105:14-18; Pl. Ex. 2, Lara Dep. 55:2-5. Defendants maintained employment records for the putative class, including records of each member's hours worked. Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals. 106:24-107:16. Defendants made their workers clock-in via a thumbprint verification system. *Id.* The workers had no opportunity to make a profit or loss, but simply worked for an hourly wage. *Id.* 107:17-108:5; Pl. Ex. 2, Lara Dep. 56:8-23. Nor did the workers make any capital investments into the business. Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 108:6-8. Defendants hired the workers for permanent positions, not for limited, determined periods of time as an independent contractor would be engaged.[6] Pl. Ex. 2, Lara Dep. 57:5-15; Pl. Ex. 3, Gamboa Dep. 26:7-20.

Defendants did not pay overtime wages to any of the putative class members. Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 64:1-17. The putative class members regularly worked overtime hours and were uniformly denied overtime pay. Pl. Ex. 6, <u>Defendants' Wage and Hour Records</u>.

Defendants classified <u>all</u> their hourly assembly line workers as independent contractors. Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 82:18-83:10. The work that the putative class performed was the primary work of Defendants' business. Pl. Ex. 5 30(b)(6) Dep. Kiss Nutraceuticals 111:22-112:4.

## III. The Proposed Class

---

employees are paid a salary, usually hourly or annual."); *Sportsman v. A Place for Rover, Inc.*, 537 F. Supp. 3d 1081, 1101 (N.D. Cal. 2021)("Where the worker is paid by the hour, it typically suggests an employment relationship; where the worker is paid by the job, it points toward independent contractor.").

[5] *Nieman v. Nat'l Claims Adjusters, Inc.*, 775 Fed. Appx. 622, 624 (11th Cir. 2019) ("Several factors guide the economic reality inquiry, namely… (3) the alleged employee's investment in equipment or materials required for his task…")

[6] *Cotter v. Lyft, Inc*., 60 F. Supp. 3d 1067, 1069 (N.D. Cal. 2015) ("We generally understand an independent contractor to be someone… [who performs] discrete tasks for limited periods…").

Plaintiff seeks to certify a class of: "All production, inventory and shipping workers who worked overtime hours and who were not paid overtime wages between May 9, 2019 and the present."

## IV. Plaintiff Satisfies the Requirements of Fed.R.Civ.P. 23(a)

### A. Numerosity

To satisfy Rule 23's numerosity requirement, the class must be so numerous that joinder of all members would be "impracticable." Fed.R.Civ.P. 23(a)(1). Here, Defendants employed approximately 180 putative members of the Class, satisfying the numerosity requirement. Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 20:5-17; 31:7-33:18; Pl. Ex. 10, <u>Declaration of Barbara Olvera</u> ¶ 6. In a similar case, a Court in this District found the joinder of between fifty and three hundred pizza delivery drivers to be impractical. *Bass v. PJCOMN Acquisition Corp.,* No. 09-CV-01614-REB-MEH, 2011 WL 2149602, at *2 (D. Colo. June 1, 2011). In another District of Colorado case, Judge Krieger found one hundred potential class members to be "a number that certainly prevents effective joinder..." *A-W Land Co., LLC v. Anadarko E&P Co. LP*, 09-CV-02293-MSK-MJW, 2012 WL 4463869, at *5 (D. Colo. Sept. 27, 2012). The proposed class is sufficiently numerous such that joinder would be impracticable.

### B. Commonality

Class certification is appropriate where the movant demonstrates that there are questions of law or fact common to the class. Fed.R. Civ. P. 23(a)(2). Sufficient common questions are present where "a classwide proceeding will be efficacious in generating common answers apt to drive the resolution of litigation." *Martinez v. Nash Finch Co.*, No. 11-cv-02092-MSK-KLM, 2013 WL 1313921, at *5 (D. Colo. Jan. 30, 2013). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution--which means that determination of its truth

or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

In this case, one common question of law is controlling: Whether Defendants' class-wide classification of its workers as independent contractors was lawful. *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (finding commonality requirement met because "the central issue posed by the case is whether the Plaintiffs were employees or independent contractors…"); *Golden v. Quality Life Servs., LLC*, CV 22-579 GJF/GBW, 2023 WL 3182645, at *4 (D.N.M. Apr. 30, 2023) (Commonality satisfied where defendants categorically and systematically mislabeled all their workers as independent contractors); *DaSilva v. Border Transfer of MA, Inc.*, 296 F. Supp. 3d 389, 400 (D. Mass. 2017) (whether putative class members were independent contractors or employees can be adjudicated on a class-wide basis). Determination of this question on a class basis will drive the resolution of this case "in one stroke". *Dukes*, 564 U.S. at 350.

C. **Typicality**

The representative Plaintiff must demonstrate that her claims "are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "A prerequisite for certification is that the class representatives be a part of the class and possess the same interest and suffer the same injury as class members." *Rector v. City & County of Denver*, 348 F.3d 935, 950 (10th Cir. 2003). Plaintiffs seek to represent a class of workers who were misclassified as independent contractors, just as she was, and who were not paid overtime wages, just as she was. Plaintiff's claims are typical because they "challenge[] the same conduct that would be challenged by the class." *Bass v. PJCOMN Acquisition Corp.*, No. 09-CV-01614-REB-MEH, 2011 WL 2149602, at *3 (D. Colo. June 1, 2011). Plaintiff's claims are typical of the class she seeks to represent.

**D. Adequacy**

The representative plaintiff and her counsel will adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). Resolution of two questions determines legal adequacy: (1) do the named plaintiff and her counsel have any conflicts of interest with other class members and (2) will the named plaintiff and her counsel prosecute the action vigorously on behalf of the class? *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187-1188 (10th Cir. 2002)(internal citations omitted). The representative plaintiff's interests are not adverse to the members of the alleged class. Rather they share a common interest in recovering unpaid overtime wages.

The representative plaintiff has, and will continue to prosecute this action vigorously on behalf of the class. The representative plaintiff sat for deposition and has complied with written discovery requests. The representative plaintiff is adequate for the purposes of Fed.R.Civ.P. 23(a)(4).

By this motion, Plaintiff's counsel apply for appointment as class counsel. Pl. Ex. 9, Milstein Decl. at ¶12; Pl. Ex. 14, Turner Decl. ¶12; Fed. R. Civ. P. 23(g). Together, Plaintiff's counsel have worked more than 419 hours on the instant class action. They will continue to dedicate all necessary resources to bring this case to its conclusion. Pl. Ex. 9, Milstein Decl. at ¶11; Pl. Ex. 14, Turner Decl. ¶11; Fed. R.Civ.P. 23(g)(1)(A)(i) and 23(g)(1)(A)(iv). Proposed class counsel are very experienced in complex class wage litigation and have consistently been appointed Class Counsel in class actions in this District and elsewhere. Pl. Ex. 9, Milstein Decl. at ¶10; Pl. Ex. 14, Turner Decl. ¶¶ 6-9; Fed. R.Civ.P. 23(g)(1)(A)(ii)-(iii); *United Food & Commer. Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 654 (W.D. Okla. 2012) (internal citations omitted) (adequacy of class counsel "implicates "the experience and competence of the

attorney[s] representing the class."). Plaintiff's counsel will fairly and adequately represent the interests of the class and should be appointed as class counsel. Fed. R.Civ.P. 23(g)(4).

## V. Plaintiff Satisfies the Requirements of Fed.R.Civ.P. 23(b)

### A. Common Questions of Law and Fact Predominate and a Class Action is the Superior Method of Resolving the Claims at Issue

"[T]he predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014).

Defendants admit that they applied a blanket policy of classifying all their workers as independent contractors. Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 82:18-83:10. They admit they did not pay overtime wages for overtime hours worked to anyone in the putative class. Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 64:1-17. The representative Plaintiff's claims and those of the class arise from the same legal grievances, and the question common to these claims regarding whether Defendants' misclassification of its workers violated the law will be litigated repetitively if these claims are not aggregated. "In terms of efficiency for the parties and for the court, a class action is superior to individual suits in the effort to achieve a fair and efficient adjudication of the plaintiffs' claims." *Bass*, 2011 WL 2149602 *3-4.

The class action is a superior method of adjudicating the instant case because the absent class members have shown no interest in controlling the litigation of separate actions; because no other litigation regarding this controversy has been commenced; and because concentration of claims here is desirable as all Defendants reside in and all claims arose in this judicial district. Fed.R.Civ.P. 23(b)(3)(A)-(C). The class action vehicle is also the superior method for adjudicating this controversy because it involves the relatively small claims of low-wage workers, most of whom lack English proficiency. Courts in this District have repeatedly recognized that a class

13

action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued. *See e.g., Belote v. Rivet Software, Inc.,* 12-CV-02792-WYD-MJW, 2013 WL 2317243, at *4 (D. Colo. May 28, 2013). The class action is the superior vehicle for the fair and efficient resolution of this controversy. Fed.R.Civ.P. 23(b)(3).

## VI. Plaintiff's Proposed Class Notice Should Be Approved.

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state" the categories of information set forth in Rule 23(c)(2)(B)(i)–(vii). The proposed notice Plaintiff submits as Exhibit 15 provides the information required in a clear manner. Once approved, Plaintiff proposes to secure a certified translation of this notice into Spanish, the predominant language in Defendant's workforce. The proposed notice should be distributed in Spanish by first-class mail and via text message[7] to all identified class members. Plaintiff's proposed notice should be approved as fair and accurate.

## VII. Conclusion

For the foregoing reasons, this case should be certified as a class action. Plaintiff Gamboa should be named class representative and undersigned counsel appointed as class counsel.

Respectfully Submitted,

*s/ Andrew H. Turner*
Andrew H. Turner
CO Atty. Reg. # 43869

---

[7] The class administrator utilized in this case is able to send a text message stating containing a link to the full text of the court approved notice. The text message itself should be distributed in Spanish and would simply read, "The U.S. District Court for the District of Colorado has certified a class action lawsuit concerning overtime wages due to individuals who worked at Kiss Nutraceuticals. You have been identified as a person entitled to participate in that action. Please follow this link to review the Court's approved explanation of the case and your rights."

14

Brandt Milstein
CO Atty. Reg. # 42866
MILSTEIN TURNER, PLLC
2400 Broadway, Suite B
Boulder, CO 80304
(303) 440-8780
brandt@milsteinturner.com

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I filed this *Motion* electronically through the CM/ECF system, which caused all parties entitled to service to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

This 9th day of October, 2024.

*s/ Andrew H. Turner*