IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number: 1:22-cv-01141-WJM-TPO

MELISSA GAMBOA on her own behalf and on behalf of all others similarly situated,

    Plaintiff,

v.

KISS NUTRACEUTICALS,
KISS INDUSTRIES, LLC,
COLE EVANS, and
GRANT DEAN,

    Defendants.

**DEFENDANTS' RESPONSE OPPOSING PLAINTIFF'S
RENEWED MOTION FOR CLASS CERTIFICATION [ECF #116]**

Defendants KISS Nutraceuticals, KISS Industries, Cole Evans, and Grant Dean ("Defendants") file this Response to oppose the Renewed Motion for Class Certification [ECF #116] (the "Motion") filed by Plaintiff Melissa Gamboa ("Plaintiff" or "Ms. Gamboa").

**I. INTRODUCTION**

Plaintiff seeks to certify a class of individuals who have either shown no interest in pursuing claims for unpaid wages or are entirely unidentifiable due to the seemingly false personal information they provided to Defendants. Plaintiff's Motion disregards this reality and instead, prematurely focuses on the merits of her claims at the expense of addressing her significant burden under FED. R. CIV. P. ("Rule") 23. When Plaintiff does address Rule 23, she relies on conclusory statements and basic recitations of law, failing to establish each required element. For the reasons below, cases like this do not warrant class certification:

***First,*** Plaintiff proposes an impermissible fail-safe class definition that requires a determination on the merits before class membership can be established.

***Second,*** even if the class is not a fail-safe, conditioning class membership on hours worked (*i.e.*, entitlement to overtime) requires individual, daily inquiries to determine class membership due to Ms. Gamboa's own admissions that she over-reported hours, evidence of other potential class members doing the same, and the conflicting testimony regarding contractors' timekeeping methods. Plaintiff also fails to provide any evidence to satisfy the typicality element for the "shipping workers" she seeks to represent.

***Third,*** after this Court granted conditional certification of Plaintiff's Fair Labor Standards Act ("FLSA") claim, not a single individual joined during the opt-in period.[1] This shows that either a class action is not a superior method of resolving this dispute given the putative class members' overwhelming lack of interest, or that a class action is not manageable/identifiable on ascertainability grounds.

***Fourth,*** Ms. Gamboa and her counsel are not an adequate class representative and class counsel, respectively, given Ms. Gamboa's credibility issues, lack of knowledge regarding the class, potential conflicts, and class counsel being fact witnesses to individual non-class claims.

Accordingly, Plaintiff's Motion should be denied.

## II. BRIEF BACKGROUND

KISS Nutraceuticals ("KISS") produces vitamin supplements and CBD gummies at its facility in Denver, Colorado. KISS generally engages independent contractors on a per order basis

---

[1] The other plaintiffs, Jackeline Lara, Susana Gonzalez, Soledad Soto, and Maria Hernandez, all joined this case as party plaintiffs prior to the FLSA opt-in period. However, none of these other plaintiffs are seeking to be class representatives in the Motion for the state law class action claims.

2

to provide services related to KISS's inventory, administration, and production for the limited purpose of filling a particular order. *Exhibit A, Declaration of Cole Evans at ¶ 14*.[2] Ms. Gamboa alleges she worked at KISS between February 2020 and April 2022 within the production and inventory departments. *First Amended Complaint* [ECF #88] *at ¶ 10*. However, "Elise Pizarro" is the fake name that Ms. Gamboa gave KISS when she began providing services. *Exhibit B, Melissa Gamboa Deposition at 9:12-15*.

Ms. Gamboa filed this lawsuit on May 9, 2022 [ECF #1], asserting claims for unpaid overtime under the FLSA, Colorado law, and Denver's Minimum Wage Ordinance. On August 4, 2023, the Court granted conditional collective action certification for Plaintiff's FLSA claim [ECF #52], pursuant to which notices were sent to a proposed class of "All hourly employees who worked on or after May 9, 2019 who were not paid overtime wages for overtime hours worked." Four (4) individuals joined the litigation as plaintiffs before the conditional certification (the "Other Plaintiffs"), but not a single individual opted-in to the lawsuit during the 60-day notice period that ended on November 11, 2023. On February 19, 2024, Plaintiff filed her First Amended Complaint [ECF #88] in which Ms. Gamboa now asserts four (4) individual claims of retaliation against Defendant Cole Evans based on alleged threats made against her.

### III. LEGAL STANDARD

Plaintiff bears "the strict burden of proving the requirements of Rule 23." *Torres-Vallejo v. Creativexteriors, Inc.*, 220 F. Supp. 3d 1074, 1079-80 (D. Colo. 2016) (citing *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006)). "In determining the propriety of a class action, the question

---

[2] Cole Evans's Declaration, dated September 29, 2022, is already in the record at ECF #32-1. Defendants reattach it here as Exhibit A for ease of reference.

3

is not whether a plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.* at 1080 (citing *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982)). That is, "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (internal citations and quotations omitted). When relying on Rule 23(b)(3), Plaintiff must show that (a) common questions of law or fact will predominate over individual questions at trial, and (b) that a class action is superior to all other available methods for fairly and efficiently adjudicating the controversy. Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).

## IV. ARGUMENTS

**1.      Plaintiff seeks to certify an impermissible fail-safe class which defeats certification.**

Plaintiff's proposed class definition—"All production, inventory and shipping workers who worked overtime hours and who were not paid overtime wages between May 9, 2019 and the present"—is an impermissible fail-safe class. *Motion, p. 10*. A fail-safe class is one where class membership depends on whether the claims are valid. *Simmons v. Isle of Capri Black Hawk LLC*, Civil Action No. 1:19-cv-00967-JLK, 2021 WL 5513744, at *6, n.3 (D. Colo. Feb. 23, 2021) (striking class allegations where the proposed class definition "resemble[d]" a fail-safe class by implying that the class had valid claims because they "did not receive compensation for time worked and/or overtime."); *see also Stallbaumer v. NextEra Energy Res., LLC*, Civil Action No.

4

22-cv-04031-HLT-ADM, 2023 WL 3496245, at *10 (D. Kan. May 17, 2023) (collecting cases).[3]

As noted in *Stallbaumer*, a fail-safe class definition creates two problems: (1) if the only members of the putative class are "those who have viable claims on the merits, then those members either win or, by virtue of losing, are defined out of the class [and] escape the bars of *res judicata* and collateral estoppel"; and (2) "it is difficult—if not impossible—to determine class membership [before merits discovery] . . . because the court would have to conduct an individual inquiry regarding the merits of each proposed plaintiff's claim in order to determine class membership." 2023 WL 3496245, at *10 (internal citations and quotations omitted); *see In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, Civil Action No. 17-md-2785-DDC-TJJ, 2020 WL 1180550, at *31 n.33 (D. Kan. Mar. 10, 2020) (acknowledging the inherent issues with fail-safe class definitions); *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 335 (W.D. Okla. 2018) (same).

Here, membership in Plaintiff's proposed class depends on whether individuals "worked overtime hours and . . . were not paid overtime wages" which assumes that such "workers" were entitled to overtime wages as non-exempt employees. That assumption, however, is the crux of this litigation and Defendants' potential liability. The reason these "workers" were allegedly not paid overtime is because they were classified as independent contractors, not employees. Whether that classification was improper (and thus, whether contractors were actually entitled to overtime) is the core legal issue in the case. By defining the class as whether a contractor "was not paid

---

[3] There is a circuit-split over whether a fail-safe class definition independently bars Rule 23 class certification, which the Tenth Circuit has not yet addressed. *Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1191 n.6 (10th Cir. 2023) (collecting cases). However, Defendants cite herein multiple decisions from district courts in this circuit which have either acknowledged the inherent issues with fail-safe classes or adopted the concept to strike proposed class definitions.

overtime," Plaintiff presupposes Defendants' liability for misclassification. The class definition is therefore impermissible because it requires the Court "to consider the merits of the controversy before certifying the class" and because a subsequent trial determination that contractors were not misclassified would at the same time destroy the class, evading *res judicata* and allowing individuals to relitigate the same claims. *See Morris v. Travelers Indem. Co. of Am.*, Civil Action No. 05-cv-00727-EWN-BNB, 2006 WL 166597, at *8 (D. Colo. Jan. 19, 2006); *In re Broiler Chicken Grower Antitrust Litig. (No. II)*, Civil Action No. 20-md-02977-RJS-CMR, 2024 WL 2117359, at *30 n.360 (E.D. Okla. May 8, 2024). For these reasons, Plaintiff's Motion should be denied.

2. **Even if the proposed class is not a fail-safe, conditioning membership on hours worked requires individual inquiries to determine class membership that overwhelm common questions of law and fact for purposes of Rules 23(a)(3) and 23(b)(3).**

The Motion identifies a single question allegedly common to the class: "Whether Defendants' class-wide classification of its workers as independent contractors was lawful." *Motion, p. 11*. However, Plaintiff fails to explain how she will adduce a common answer to this question at trial despite her burden to offer "significant proof" that the allegedly common question is amenable to a common answer. *Dukes*, 564 U.S. at 353-54. Specifically, she must show that the question can be answered "yes" or "no," and that the answer will be accurate for all putative class members. "What matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* at 350 (internal citations and modifications omitted).

Here, Plaintiff simply contends that any requirement to assess individual independent contractors' status is negated by the fact that KISS classified all workers as independent

6

contractors. *Motion, p. 4*.[4] However, in the context of a misclassification claim, "a blanket exemption policy does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties." *Levine v. Vitamin Cottage Nat. Food Markets, Inc.*, Civil Action No. 20-cv-00261-STV, 2023 WL 3648684, at *14 (D. Colo. May 25, 2023) (quoting *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 948 (9th Cir. 2011) (internal quotations omitted)). Because KISS's classification policy may have accurately classified some independent contractors and misclassified others, asking the undisputed question of whether KISS had a uniform classification policy for its workers is not "the type of common contention that will generate common answers apt to drive resolution of the litigation." *Id.* (quoting *Dukes*, 564 U.S. at 350 (internal quotations omitted)).

Ms. Gamboa's deposition testimony shows that a class premised on hours worked is subject to individual, daily inquiries. Ms. Gamboa admitted that she herself reported more hours on her timesheet than she had actually worked under the suggestion of other KISS contractors (*i.e.*, potential class members). *Ex. B, Gamboa Dep. at 77:3-17*. She further alleged that a supervisor at KISS would inflate hours for potential class members in the supervisor's "inner circle, even if they didn't work." *Id. at 77:22-79:18, 140:5-142:21*. Ms. Gamboa's own admission and allegation raise individual inquiries that overwhelm the common question of law and fact asserted in the Motion. For each individual in the class, the Court would have to assess whether hours were reported properly. And, to be clear, this issue does not relate solely to damages; it relates to inclusion in the

---

[4] To support this argument, Plaintiff cites (i) *Dalton v. Lee Publications, Inc.*, 270 F.R.D. 555 (S.D. Cal. 2010) which was decided **before** *Wal-Mart v. Dukes* (2011) significantly changed the commonality analysis; and (ii) *Golden v. Quality Life Servs., LLC*, 2023 WL 3182645 (D.N.M. Apr. 30, 2023) which involved uniform timekeeping practices and ultimately **denied** Rule 23 class certification without prejudice.

class. As previously noted, Plaintiff's proposed class is based on whether an individual "worked overtime hours." Determining whether someone "worked overtime hours," and is therefore part of the class, is an individualized issue that outweighs any common questions.

The inquiry becomes even more individualized because, according to Ms. Gamboa and the Other Plaintiffs, timekeeping methods within the inventory and production departments were conflicting, different, or changed over time. *Ex. B, Gamboa Dep. at 33:24-35:10, 47:6-17* (Ms. Gamboa explaining that the method of recording work hours changed when she moved from production to inventory and that supervisors initially recorded contractors' start times but that, subsequently, "the habit was that every employee would write their entry hour and the exit hour."); *Exhibit C, Maria Hernandez Deposition at 77:2-79:9* (Ms. Hernandez testifying her work hours in production were reported by co-contractors who observed her arriving and leaving the facility each day); *Exhibit D, Susana Gonzalez Deposition at 49:6-22* (Ms. Gonzalez testifying to the same); *Exhibit E, Soledad Soto Deposition at 56:23-58:9* (Ms. Soto testifying to the same); *Exhibit F, Jackeline Lara Deposition at 33:8-22* (Ms. Lara testifying that she would sometimes self-record her hours and other times, "leaders" would write them down).

To even certify the class, each time record would need to be litigated to verify whether individuals or their supervisors accurately reported hours or inflated them, which bears on their inclusion in the class. Then, the same exercise would be required to determine if liability exists. Simply relying on existing records, as Plaintiff suggests, is not sufficient. "Again, the critical issue for certification purposes is whether [the] [p]laintiff has both identified common contentions capable of classwide resolution, and established that these common contentions predominate over questions requiring individual, member-by-member resolution." *Levine*, 2023 WL 3648684, at *14

(citing *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 788-89 (10th Cir. 2019)). Plaintiff has not done so in the Motion and Rule 23 class certification should therefore be denied.

### A. *Plaintiff fails to show commonality or typicality with respect to the "shipping workers" she seeks to represent.*

Plaintiff Gamboa seeks to represent a class that includes "shipping workers," but nowhere in the Motion does she offer evidence of "shipping workers'" job duties, training, or work schedules to show that their claims are typical of hers or that her misclassification question can be commonly answered for such workers. Indeed, none of the Other Plaintiffs identify themselves as "shipping workers" and at her deposition, Ms. Gamboa was not even aware of a "shipping department" at KISS (as opposed to inventory and production). *Ex. B, Gamboa Dep. at 100:9-101:19, see also at 106:1-13* (Ms. Gambo admitting she does not know anything about what individuals who bring in pallets are told regarding their job, training, schedule, or duties). Therefore, at the very least, "shipping workers" should be removed from the proposed class.

### 3. The lack of any collective action opt-ins shows that either a class action is not the superior method to resolving this case or the proposed class is not ascertainable.

Despite notices being sent to more than 100 individuals in the class Plaintiff proposes, not a single individual opted in to this litigation. A zero percent (0%) opt-in rate cannot be ignored.

Pursuant to the Court's conditional collective action certification order [ECF #52], notices were sent to "All hourly employees who worked on or after May 9, 2019 who were not paid overtime wages for overtime hours worked" which mirrors the class definition Plaintiff proposes in the Motion. *ECF #52 at 9*. The notices also included Plaintiff's theory of the case which equally applies to the state law claims for which she now seeks class certification: "An employee sued Kiss Nutraceuticals to recover unpaid wages that she claims you and other employees are owed.

9

The employee claims that the Kiss Nutraceuticals broke the law by not paying overtime wages. She is suing to recover unpaid wages, liquidated damages, attorney fees, and costs." *[ECF #30-2]*.

The FLSA opt-in period closed on November 11, 2023 without **anyone** opting-in. The only reasonable inference to draw from this fact is that there is either a total disinterest among putative class members to pursue these state law claims on a classwide basis or that the putative class Plaintiff proposes is not ascertainable.

> A. *Given the putative class members' total disinterest in the FLSA collective action, a class action is not the superior method to litigating identical state law claims under Rule 23(b)(3).*

Plaintiff cannot satisfy the superiority element of Rule 23(b)(3) where **zero percent (0%)** of the putative class opted-in to the FLSA collective action over similar claims. Illustrating this point are the decisions in *Garcia v. Freedom Mortg. Corp.*, 274 F.R.D. 513 (D.N.J. 2011) and *White v. 14051 Manchester Inc.*, 301 F.R.D. 368 (E.D. Mo. 2014). Both cases are identical to the present action as they involved wage claims under the FLSA and state law, where FLSA opt-in conditional certification and notice occurred before Rule 23 class certification was sought.

In *Garcia*, "less than 44% of [one putative subclass] and less than 17% of the [other putative subclass] [had] opted into the FLSA litigation." *Garcia*, 274 F.R.D. at 517. The court found that, because the plaintiffs' state wage and hour claim for unpaid overtime were "substantively identical" to their FLSA claim, and "both claims arise from the same set of operative facts, . . . [i]t would . . . be unfair to certify [a state law] class and drag the putative class members into this [c]ourt when they have **already demonstrated an interest to not be involved in this litigation**." *Id.* (emphasis added). As noted in *Garcia*, class members may not opt-in for "a number of reasons, such as a belief that the claim is spurious or a desire not to enter into litigation[,]" but

"[i]n the absence of allegations or evidence of improper behavior towards the class members or defective notice, the [c]ourt need not question why the opt-in yield was so low[.]" *Id.* Whatever their reasons may be, "it is clear that a large number of such putative class members have an interest in the individual control of the prosecution of their FLSA claims." *Id.* Due to the low opt-in rate during the conditional certification stage, the [c]ourt ruled that the plaintiffs did not meet the superiority element of Rule 23(b)(3), and class certification was therefore denied. *Id.*

Similarly in *White*, "less than 10% of the [collective action notices] sent resulted in putative class members consenting to join the FLSA action." 301 F.R.D. at 384. Based on this low opt-in rate, the court "discern[ed] that at least some members of the putative class do not support the class resolution of the state wage and hour claims and would prefer individual claims or not to pursue claims." *Id.* Relying on the decision in *Garcia*, the court in *White* also found that it was not appropriate to certify a state law class action because "class adjudication is not superior to pursuing their individual claims, if any." *Id.*

Here, **no one** in the 180-member putative class alleged by Plaintiff consented to join the FLSA collective action upon receiving notice, significantly lower than the participation rates in either *Garcia* or *White*. Plaintiff almost certainly engaged in a campaign to convince former and current KISS contractors to participate in the FLSA lawsuit, and they unanimously elected not to do so. There is no allegation of improper behavior toward class members or defective notice. All but four (4) individuals of the putative class—none of which joined through the post-notice opt-in process—have elected to take "an interest in the individual control of the prosecution" of their claims, by not filing at all. *See Garcia*, 274 F.R.D. at 517; *see also Thiebes v. Wal-Mart Stores, Inc.*, Civil Action No. 98-802-KI, 2002 WL 479840, at *3 (D. Or. Jan. 9, 2002) ("The fact that

11

such a small percentage of the employees opted-in is telling (by plaintiffs' calculations, the percentage is 2.7%) and cautions against a finding that joinder is impracticable, especially in light of the fact that the notice of the FLSA collective action included a description of plaintiffs' theory of the case that is the same as their basis for liability under the state law claims[.]"). Plaintiff therefore cannot meet the superiority requirement, Plaintiff and the Other Plaintiffs can pursue their claims on a non-class basis, and class certification should be denied.

> **B.** *Alternatively, the lack of FLSA opt-ins supports the denial of class certification on ascertainability grounds.*

Although Plaintiff has not raised any defects in the FLSA collective action notice to date, she may argue in her reply brief that the complete lack of opt-ins is not due to disinterest but because the putative class members did not receive the notice. This argument, however, only underscores the ascertainability issues with the putative class that Plaintiff seeks to certify.

Courts treat ascertainability both as "a prerequisite to the class certification inquiry under Rule 23(a)" and "in the context of numerosity and manageability, particularly in the context of Rule [23](b)(3) with regard to relevant difficulties providing notice to class members." *Rivera v. Exeter Fin. Corp.*, Civil Action No. 15-cv-01057-PAB-MEH, 2019 WL 6176069, at *3 (D. Colo. Mar. 31, 2019), *aff'd*, 829 F. App'x 887 (10th Cir. 2020). The Tenth Circuit has not directly addressed to what extent ascertainability is a class certification requirement but has stated that plaintiffs must offer some evidence of established, ascertainable numbers constituting the class. *White v. Gen. Motors LLC*, Civil Action No. 21-cv-00410-CNS-MEH, 2023 WL 3278460, at *5 (D. Colo. May 5, 2023), *reconsideration denied*, 2023 WL 4628438 (D. Colo. June 30, 2023) (discussing a circuit split on the extent ascertainability plays a role in the class certification analysis). "Nonetheless, the determination whether there is an administratively feasible

mechanism for determining whether putative class members fall within the class definition must be tailored to the facts of the particular case." *Id.* at *6 (internal citation, quotations, and modifications omitted)).

To the extent Plaintiff argues on reply (for the first time) that the FLSA notices were not received, she must concede there is no administratively feasible mechanism to identify individuals within the proposed class. The Motion states in conclusory fashion that the class is ascertainable from the same wage and hour records used for the collective action notices. *Motion, p. 5*. But this presumes that the identifying information these individuals provided to KISS was true and accurate. As noted above, however, Ms. Gamboa herself provided KISS a false name when she began providing services to KISS. *Ex. B, Gamboa Dep.at 9:12-15*. It is reasonable to infer that other contractors may have also supplied false names and identifying information, which—beyond a lack of interest—is the only other logical explanation for the lack of opt-ins.

Therefore, through no fault of KISS's recordkeeping, many putative class members are unidentifiable, and verifying whether any individual is even a valid class member would require an individualized inquiry. This fundamental issue of class member identification further underscores the impracticality of class certification. Without a reliable way to determine if individuals were actually engaged with KISS under their real identities, it is impossible for them to receive notice, participate in the class, or share in a classwide judgment or settlement, making a class action infeasible in this case.

**4.      Ms. Gamboa and her counsel are not adequate representatives of the proposed class given Ms. Gamboa's credibility issues, lack of knowledge regarding the class, potential conflicts, and counsel being fact witnesses to individual retaliation claims.**

Two questions are relevant to the adequacy-of-representation inquiry: (1) whether the named plaintiff and their counsel have any conflicts with other proposed class members; and (2) whether the named plaintiff and their counsel will vigorously prosecute the action on behalf of the class. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002).

Ms. Gamboa is not an adequate class representative for three reasons. **First,** she lacks credibility given her admissions that (i) she reported false working hours on more than one occasion, *Ex. B, Gamboa Dep. at 77:3-17*; (ii) she restricted KISS's access to internal inventory records as a way to leverage payment of final paychecks she claims were owed, *id. at 84:3-85:20*; and (iii) she provided a false name when she began providing services to KISS, *id. at 9:12-15*. See *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990) ("A plaintiff's lack of credibility and the impurity of his motives can render him an 'inadequate' class representative.") (collecting cases); *see also Lane v. Page*, 272 F.R.D. 558, 577–78 (D.N.M. 2011). **Second,** Ms. Gamboa purports to represent "shipping workers" in the proposed class but, by her own admission, is not even aware of a "shipping department" within KISS, does not know anything about these purported individuals, and failed to identify them at all in her Motion. *Ex. B, Gamboa Dep. at 100:9-101:19, 106:1-13*. **Third,** Ms. Gamboa is not an adequate class representative because her four (4) individual retaliation claims may outweigh the value of her individual wage claim. *[ECF #88] at ¶ 30, 134-171*. This would create a conflict of interest, as she may focus more on her individual claims which would negatively affect her decisions regarding the class to its members' detriment. *See, e.g., Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 678-79 (S.D. Ohio 1995) (finding class

representative inadequate because their personal claim against the defendant could remove incentive to diligently pursue class claims); *see also* 5 MOORE'S FEDERAL PRACTICE-CIVIL § 23.25 (2022) ("Even the existence of non-class claims may distract a class representative from vigorously pursuing class claims.").

With respect to class counsel, class certification requires a finding that class counsel will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4); *see* Fed. R. Civ. P. 23(g)(1)(B) (when assessing class certification, courts "may consider any other matter pertinent to counsel's ability to . . . adequately represent the interests of the class[.]"). Here, proposed class counsel cannot adequately represent the class's interest given counsels' unique personal involvement with, and knowledge of, the facts surrounding Other Plaintiff Hernandez's four (4) retaliation claims. [ECF #88] at ¶¶ 38-46, 134-171. Under the "advocate-witness rule," attorneys are disqualified from advocating at a trial in which they are "likely to be a necessary witness" unless the testimony relates to an uncontested issue, relates to the nature and value of legal services rendered, or disqualification of the attorney would work substantial hardship on the client. Colo. RPC 3.7(a). Proposed class counsel are referenced in the Amended Complaint's allegations underlying the retaliation claims, and counsel has already entered their own testimony in the record regarding the same. *See ECF #99-1*; *ECF #99-2*. This is an obvious impediment to class counsels' appointment under the "advocate-witness rule," yet the Motion fails to address it.

## V. <u>CONCLUSION</u>

For the reasons above, Defendants respectfully request that the Court deny the Motion.

Respectfully submitted this 23rd day of October 2024.

HUSCH BLACKWELL LLP

*s/ Ashley W. Jordaan*
Ashley W. Jordaan
Owen M. Davis
1801 Wewatta Street, Suite 1000
Denver, CO 80202
Phone: (303) 749-7200
Fax: (303) 749-7272
E-mail: Ashley.Jordaan@huschblackwell.com
Owen.Davis@huschblackwell.com

*s/ Scott D. Meyers*
Scott D. Meyers
Husch Blackwell LLP
8001 Forsyth Boulevard, Suite 1500
St. Louis, MO 63105
Phone: (314) 480-1500
Fax: (314) 480-1505
E-mail: Scott.Meyers@huschblackwell.com
***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

    I hereby certify that on this 23rd day of October 2024, a true and correct copy of the foregoing **DEFENDANTS' RESPONSE OPPOSING PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION [ECF #116]** was served via CM/ECF on the following:

Andrew H. Turner
Brandt P. Milstein
Milstein Turner, PLLC
2400 Broadway, Suite B
Boulder, CO 80304
andrew@milsteinturner.com
brandt@milsteinturner.com

*Attorneys for Plaintiffs*

                                                   *s/ Aileen P. Thead*
                                                 Legal Support Specialist