IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 22-cv-01141-WJM-JPO

MELISSA GAMBOA on her own behalf
and on behalf of all others similarly situated,

Plaintiff,

v.

KISS NUTRACEUTICALS, *et. al.*

Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF HER
RENEWED MOTION FOR CLASS CERTIFICATION [ECF# 116]**

Plaintiff respectfully submits the following Reply in Support of her Renewed Motion for Class Certification [ECF# 116]. As set forth below, Defendants' arguments against class certification are unfounded and unpersuasive. Plaintiff's motion should be granted.

**I.   Plaintiff's Proposed Class Definition Is Not an Impermissible Fail-Safe.**

Plaintiff seeks certification of a class of "All production, inventory and shipping workers who worked overtime hours and who were not paid overtime wages between May 9, 2019 and the present." ECF# 116 pg. 10. Defendant objects, claiming that the proposed class is an impermissible fail-safe class. ECF# 118 pg. 4-6. Defendant is mistaken.

"A class definition creates a fail-safe class when the class definition bases membership in the class on the validity of the plaintiff's claims." *Simmons v. Isle of Capri Black Hawk LLC*, No. 1:19-CV-00967-JLK, 2021 WL 5513744, at *6 (D. Colo. Feb. 23, 2021)(quoting, Erin L.

Geller, *The Fail-Safe Class as an Independent Bar to Class Certification*, 81 Fordham L. Rev. 2769, 2782 (2013)).  Plaintiff's proposed definition does not do so.  Defendant's argument to the contrary implies (or assumes) into Plaintiff's definition critical words that simply are not there. As Defendant puts it:

> Here, membership in Plaintiff's proposed class depends on whether individuals "worked overtime hours and . . . were not paid overtime wages" which assumes that such "workers" were entitled to overtime wages as non-exempt employees. That assumption, however, is the crux of this litigation and Defendants' potential liability."

ECF# 118 pg. 5.  The parties agree that "the crux of this litigation" is "entitlement to overtime wages as non-exempt employees." *Id.*  That entitlement is not a component of Plaintiff's proposed class definition, but rather a common question of law and fact uniting the class. Plaintiff's definition would limit the class to those who worked overtime hours and were not paid the overtime premium, but says nothing of that class' entitlement to such overtime premiums. ECF# 116 pg. 10.  That is the class-wide, common question standing between the class definition and liability.  Plaintiff's proposed class definition is not a fail-safe.[1]

Regardless, on the facts of this case, Defendant's argument is a red herring.  The record makes clear that a class of workers who were not paid overtime premiums is simply a class of all workers.  Defendants testify clearly that that they never paid overtime to **_any_** worker.  ECF# 116-5, Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 64:1-17. Defendants testify clearly that they made no individualized determination, but classified **_all_** non-managerial workers as exempt independent contractors in one fell swoop.  *See,* Pl. Ex. 16, 30(b)(6) Dep. Kiss Nutraceuticals

---

[1] Even if Plaintiff's class definition *were* considered a fail-safe, the Tenth Circuit recently stated that it has not decided whether such class definitions are permissible.  *Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1191 n. 6 (10th Cir. 2023)(noting "circuit disagreement over whether a fail-safe class definition is an independent bar to Rule 23 class certification.").

2

115:5-12; *see also,* ECF# 116-5, Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 82:18-83:14.  The proposed class of all workers who worked overtime and weren't paid overtime wages is then actually a class of any worker who worked overtime hours.[2]

    **II.**    **The Alleged Class Is Ascertainable.**

        **A. Defendants' Records of Hours Worked Readily Identify the Class Members.**

The daily and weekly timekeeping records Defendants created and retained for each of the approximately 180 purported independent contractors working in their factory belie their argument that identifying those who worked overtime hours is impossible or even burdensome. Take for one example Defendants' Payroll Summary attached to this pleading as Exhibit 17 (filed under Level I restriction as ECF#125).  This page depicts just one complete week of payroll and permits the identification of 60 individuals as members of the proposed class within seconds.  *Id.*  As the document header states, pay frequency was weekly; here payroll ran on 12/23/2022 and again on12/30/2022.  Reviewing the week compensated on 12/30/2022, the third column from left notes weekly total hours and lists 60 individuals who worked in excess of 40 hours during that workweek within the class period.  *Id.*  Having established that Defendants did not pay overtime premiums to any worker, those total weekly hours are all we need to know to

---

[2] Were Plaintiff's proposed definition considered a failsafe, and were the Court to determine that such a definition were indeed impermissible, that concern "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)(collecting cases). Without changing its substance or membership, Plaintiff's proposed class definition could be refined to "All production, inventory and shipping workers who worked overtime hours ~~and who were not paid overtime wages~~ between May 9, 2019 and the present."

3

ascertain their membership in the alleged class. *See,* ECF# 116-5, Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 64:1-17.

Exhibit 17 is not an isolated example. Applying the same process to Defendants' Payroll Summary attached to this pleading as Exhibit 18 (also filed under Level I restriction as ECF# 126) identifies 10 additional class members within seconds, as 10 distinct individuals (not appearing in Exhibit 17) worked overtime hours in the workweek compensated on 9/1/2023. Defendants' payroll records readily identify the members of the alleged class.

### B. Defendants' Payroll Records are not Inaccurate.

Facing class certification, Defendants now impeach the accuracy of their own payroll records. ECF# 118 pgs. 7-8. Of course, Defendants had state and federal legal obligations to create and maintain accurate records of time worked. 29 C.F.R. §§ 516.2, 516.6; 7 CCR 1103-1(7). Defendants testify to having a strong financial interest in accurate timekeeping. Pl. Ex. 16, 30(b)(6) Dep. Kiss Nutraceuticals, 60:25-61:2 ("People are stealing time, which is stealing finances and stealing capital from me personally and my company."). To that end, Defendants testify to having an uncommonly strong enforcement policy encouraging accurate records. *Id* at 59:3-63:22 (Defendant filed police reports for theft against five workers alleged to inflated their reported hours worked). Indeed, the detailed records Defendants kept – recording work time down to the hundredths of an hour - reflect diligence. Pl. Exs. 17-18. Upon examination, Defendant's recent claims that their records cannot be trusted are unsupported.

Proposed class representative Melissa Gamboa never submitted and was never paid for time she did not work. Ex. 19, Gamboa Dep. 142:13-143:10 ("Q: Did she ever pay you for hours you didn't work? A: No."); ECF# 118-2, Def. Ex. B, Gamboa Dep. 77:18-21 (Q: (By Ms.

4

Colvin) Did you ever report on your time sheets or otherwise [to] anyone else within Kiss time that you didn't actually work?  A: No.").  A fair reading of the testimony Defendants submit as her admission of time theft shows anything but.  ECF# 118-2, Def. Ex. B, Gamboa Dep. 77:3-21.  Ms. Gamboa was told by supervisors to add an hour to her factory in/out timesheet to compensate her for having worked earlier, when the factory was closed, meeting supply trucks arriving in the middle of the night.  *Id.*  That is not time theft.  That is not fraud.

The lone episode of alleged hours-inflation Defendant deploys to defeat class certification did not involve Ms. Gamboa, was isolated to just 5-6 workers and features an employer response so bizarre as to call the whole incident into question.  In Defendants' telling, Laura Ibarra is an independent contractor, but has authority to issue checks on the Company's behalf. Pl. Ex. 16, 30(b)(6) Dep. Kiss Nutraceuticals, 60:25-63:22.  She runs payroll to compensate all the other supposed independent contractors who staff Defendants' factory. *Id.*  Ms. Ibarra is alleged to have inflated the hours of 5-6 such workers, giving unearned payments to (and receiving kickbacks from) her family and friends.   Pl. Ex. 19, Gamboa Dep. 142:13-143:9; Pl. Ex. 16, 30(b)(6) Dep. Kiss Nutraceuticals, 61:3-19. Those workers are named in the record.  Ms. Gamboa was not among them.  ECF# 118-2, Gamboa Dep. 78:4-25.  When Defendants discovered this, Mr. Evans filed police reports for theft against five workers.  Pl. Ex. 16, 30(b)(6) Dep. Kiss Nutraceuticals, 59:3-63:22.  He did not, however, fire Ms. Ibarra.  *Id.*  She retained her position and was given a disciplinary letter.  *Id.*   There is no evidence that the time records of any more than 6 of the approximate 180 class members (3.33%) may be inaccurate.  Defendants' payroll records can be used to identify class members.

### C. The Class List and Contact Information Have Been Successfully Ascertained.

Defendants argue that the class cannot be ascertained for notice because their immigrant workforce may have supplied the unsuspecting Defendants with false names and other identifying information. ECF# 118 pgs. 12-13. These concerns are unfounded.

The notion that Defendant is unaware of the true identities of its workers is ridiculous. For example, Defendant Evans' sworn declaration states "Other than as the named plaintiff in this litigation, I do not know who Melissa Gamboa is. Kiss Nutraceuticals did not employ or engage the services of anyone named "Melissa Gamboa." ECF# 118-1 ¶¶ 6-7. Defendants' contemporaneous business records disagree, however. *See*, Ex. 20, Essential Worker Ltr. This COVID shutdown era letter is dated March, 24 2020 and names Plaintiff Melissa Gamboa Serrano as an essential worker for Kiss Industries, LLC. *Id.* Defendants are able to identify their workers. Defendants were not actually deceived regarding Ms. Gamboa's identity.

The Court will recall that the last time this matter came before it concerned motions arising from Defendant Evans' disruption of a *pro bono* immigration clinic he mistook for a "recruitment meeting" soliciting participation in this case. ECF# 115 pgs. 4-5. As the Court noted, Plaintiffs' counsel distributed notification of that immigration clinic to "the full list of addresses Defendant had disclosed in this litigation." ECF# 115 pgs. 4-5. Over 60 class members responded to notice distributed using that list by attending the clinic. ECF# 99-5, Jenks Decl. ¶15 (noting that 45 applicants were served that day, many were waitlisted). Of course, those class members in no need of immigration assistance and those who were busy or frightened away by Defendant's interruption of the clinic could have received notice but would not be

6

counted in those numbers.  The existing class list Defendant provided has proven to be an effective means of issuing notice.  The alleged class is ascertainable.

### III. Suppressed Opt-in Participation Does Not Impeach Rule 23(b)(3) Superiority.

Defendants emphasize the minimal opt-in participation in this case, arguing that it indicates Rule 23 class treatment would not be the superior method of adjudication here.  ECF# 118 pgs. 10-12.   As set forth below, it indicates the contrary.

The majority of Courts to consider it have rejected Defendants' suggestion that a low FLSA opt-in rate impeaches superiority. *See e.g., Ganci v. MBFInspection Servs. Inc.,* 323 F.R.D. 249 (S.D. Ohio 2017); *Harris v. Vector Mktg. Corp.,* 753 F. Supp. 2d 996, 1017–18 (N.D. Cal. 2010); *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 163 (S.D.N.Y. 2008); *Guzman v. VLM, Inc.,* No. 07-CV-1126 (JG)(RER), 2008 WL 597186, at *8 (E.D.N.Y. Mar. 2, 2008); *Ramirez v. RDO-BOS Farms, LLC,* Civil No. 06–174–KI, 2007 WL 273604, at *2 (D. Or. Jan. 23, 2007).  Each of the foregoing opinions noted that fear of reprisal motivates low opt-in rates and found the Rule 23 opt-out mechanism superior because it protects vulnerable populations' anonymous access to important state law rights.   Even the *Garcia v. Freedom Mortg. Corp* case upon which Defendants rely limits its conclusion to cases "[i]n the absence of allegations or evidence of improper behavior towards the class members".  274 F.R.D. 513, 517 (D.N.J. 2011). From its inception, this case has featured extensive retaliatory pressure dissuading participation.

 "On May 13, 2022, three days after being served with the original Complaint, Defendant Evans instructed one of his employees to contact Plaintiff Gamboa and to tell her that he knew where she lived, he knew who her new employer was, he knew what kind of car she drove, that he could

7

have Plaintiff Gamboa jailed and deported, and that she should drop her lawsuit against him." ECF# 88, First Amended Complaint ¶30.

Shortly after the Complaint was filed, Defendants filed police reports against multiple class members, alleging that their claimed hours worked constituted theft. Pl. Ex. 16, 30(b)(6) Dep. Kiss Nutraceuticals, 59:3-63:22.

On January 6, 2024, Mr. Evans disrupted a worker meeting, refused to leave and announced that he knew "exactly who has signed up and who hasn't" and that his workers "will not be a part of any of your nonsense." Defendant Evans further represented to those assembled that he had a video recording of that meeting. ECF# 91-2, Video Recording.

Following that incident, "[s]everal workers expressed how terrible and frightened Mr. Cole's presence made them feel. Other workers stated that they were not surprised Mr. Cole had shown up because that is the way he is, and the way they were used to being treated by him. At least two workers informed [volunteer immigration lawyer Jocelyn Jenks] that one of Mr. Evan's managers was in a car outside of the clinic watching the attendees come in and out for the remainder of the day. Another worker informed [Ms. Jenks] that Mr. Evans had told current employees if they came to this clinic, they should not bother coming back to work because he would fire them." ECF# 99-5, Jenks Decl. ¶16.

Denver Labor has cited Defendants Kiss Nutraceuticals and Cole Evans for their treatment of class members, fining them "$148,000.00 for 28 acts of illegal retaliation." Pl. Ex. 21, Liability And Penalty Determination, pg. 1. On October 3, 2024, Defendants Kiss Nutraceuticals and Cole Evans settled with the National Labor Relations Board, posting notice of rights and committing not to engage in surveillance of or to threaten reprisals against class members. Pl. Ex. 22, NLRB Settlement Agreement, pg. 4. In this case, an environment of

8

pervasive and well-documented retaliation achieved its goal of suppressing opt-in participation. Rule 23 class certification rights this wrong and vindicates the rights of fearful workers. In this case, "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

### IV.  Defendants Present No Material Factual Differences Among Class Members.

Defendants state that an individualized assessment of independent contractor status is required and that class treatment is therefore inappropriate. ECF# 118 pg. 7. However, Defendants concede that they made one unitary determination to classify all class members as independent contractors,[3] and importantly Defendants fail to offer *any* evidence of *any* material divergence in the experience of any class members.[4] While Defendants state that "KISS's classification policy may have accurately classified some independent contractors and misclassified others," they decline to offer one example of who might have been properly classified and how their experience differed from Ms. Gamboa's. *Id.*

Plaintiff's proffers demonstrating the factual unity of the class stand unrefuted. Ms. Gamboa and the absent class members performed the same unskilled work for Defendants.

---

[3] *See,* Pl. Ex. 16, 30(b)(6) Dep. Kiss Nutraceuticals 115:5-12; *see also,* ECF# 116-5, Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 82:18-83:14.

[4] Defendants' contention that those workers who signed in and out on timesheets and those whose supervisors ("co-contractors" in Defendants' parlance) recorded their entry and exit on timesheets cannot have their uniform, common deprivation of overtime premiums adjudicated together speaks volumes about the strength of Defendants' opposition. ECF# 118 pg. 8. Those are not materially distinct timekeeping systems. None of the hours recorded were ever paid at overtime rates. The style of timekeeping an individual used is not material to the independent contractor inquiry; the facts that Defendants uniformly dictated timekeeping and its method is material. Pl. Ex. 16, 30(b)(6) Dep. Kiss Nutraceuticals 73:9-74:16.

9

ECF# 116-1, Soto Dep. 33:8-13; ECF# 116-2, Lara Dep. 35:5-10; ECF# 116-3, Gamboa Dep. 22:10-23:20.  Ms. Gamboa and the absent class members received the same standard training.  *See,* ECF# 60.  Pl. Ex. 7, Standard Operating Procedure 01.002 Rev 02 (2.0).  Ms. Gamboa and the absent class members worked subject to the same Standard Operating Procedures.  ECF# 60, Pl. Ex. 7, Standard Operating Procedures.  Ms. Gamboa and the absent class members were supervised by the same individuals.  ECF# 116-3, Pl. Ex. 3, Gamboa Dep. 61:8-14; ECF# 116-1, Pl. Ex. 1, Soto Dep. 22:8-20, 35:2-6; ECF# 116-2, Pl. Ex. 2, Lara Dep. 24:15-21.  Defendants' supervisors dictated Ms. Gamboa's and the absent class members' work schedules via WhatsApp messages.  ECF# 116-3, Pl. Ex. 3, Gamboa Dep. 69:2-6; ECF# 116-2, Pl. Ex. 2, Lara Dep. 25:14-16; ECF# 116-1, Pl. Ex 1, Soto Dep. 22:8-20; ECF# 116-8, Pl. Ex. 8, WhatsApp Message.  Ms. Gamboa and the absent class members were all classified as independent contractors.  *See,* ECF# 116-6, Pl. Ex. 16, 30(b)(6) Dep. Kiss Nutraceuticals 115:5-12; *see also,* ECF# 116-5, Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 82:18-83:14.  Ms. Gamboa and the absent class members were all paid on an hourly basis.  ECF# 116-5, Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 105:19-106:2; ECF# 116-3, Pl. Ex. 3, Gamboa Dep. 22:24-23:2; ECF# 116-1, Pl. Ex. 1, Soto Dep. 62:20-22; ECF#s 125 & 126, Pl. Exhs. 17-18, Payroll Summaries.  Ms. Gamboa and the absent class members were all denied overtime premiums for hours over 40 in a workweek.  ECF# 116-5, Pl. Ex. 5, 30(b)(6) Dep. Kiss Nutraceuticals 64:1-17.

All record evidence demonstrates that the class shared common work conditions.  Defendant did not engage in individual assessments, but made a unitary decision to classify all class members as independent contractors exempt ineligible for overtime payments.  These claims may be and should be adjudicated together.  Plaintiff's motion should be granted.

Respectfully Submitted,

*/s/ Andrew H. Turner*
Andrew H. Turner
Brandt P. Milstein
MILSTEIN TURNER, PLLC
2400 Broadway - Suite B
Boulder, CO 80304
Telephone: (303) 305-8230
Email: andrew@milsteinturner.com
brandt@milsteinturner.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing document on Defendants by electronically filing with the Clerk of Court, using the CM/ECF system which will send notification of such filing to all counsel of record *via* e-mail.

This 15th day of November, 2024,

*/s/Andrew H. Turner*
Andrew H. Turner
*Counsel for Plaintiffs*

11