IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 22-cv-01141-WJM-JPO

MELISSA GAMBOA on her own behalf
and on behalf of all others similarly situated, *et. al.*

Plaintiffs,

v.

KISS NUTRACEUTICALS, *et. al.*

Defendants.

---

**PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

---

Plaintiffs respectfully submit this Motion for Default Judgment as to Defendants Kiss Nutraceuticals, LLC and Kiss Industries, LLC ("the Corporate Defendants") pursuant to Fed. R. Civ. P. 55(b)(2).[1] For the reasons set forth below, the Plaintiff class is entitled to default judgment.

---

[1] Both Limited Liability Companies which are the subject of this motion are currently *pro se*. Undersigned counsel hereby certifies in compliance with D.C. COLO. LCivR 7.1(A) that he has conferred with Defendant Cole Evans, who is the Registered Agent of both Defendant Limited Liability Companies, regarding this motion. ECF# 145-1, Secretary of State Filings Identifying Registered Agent. Plaintiff's counsel conferred with Mr. Evans *via* e-mail messages dated April 4, 2025 and April 7, 2025 regarding this motion. ECF# 145-2, Email Correspondence. Mr. Evans declined to provide a position on this motion, stating that "My attorney and I will be in touch with you on our stance regarding your question within the next 30 days." *Id.* No attorney has entered an appearance on behalf of any Defendant. No attorney has been identified to Plaintiffs as representing the Corporate Defendants. No attorney has contacted Plaintiffs' counsel on behalf of the Corporate Defendants. Informed in response that the Court has Ordered that this motion be filed by Wednesday April 9, 2025, Mr. Evans did not respond to provide a position. *Id.*

I.  **Procedural History**

This class action alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., the Colorado Minimum Wage Act, C.R.S. § 8-6-101 et seq., the Denver Minimum Wage Ordinance, D.R.M.C. Ch. 58, § 58-16, et seq., and the Colorado Wage Claim Act, C.R.S. § 8-4-101, et seq. was originally filed on May 9, 2022.  ECF# 1.

Defendant Kiss Nutraceuticals, LLC[2] was served with a copy of the Summons, Complaint, Civil Cover Sheet, Magistrate Judge Consent form and a cover letter through personal delivery to Registered Agent Cole T. Evans on May 11, 2022. ECF# 6-3.  Defendant Kiss Industries, LLC was served with a copy of the Summons, Complaint, Civil Cover Sheet, Magistrate Judge Consent form and a cover letter through personal delivery to Registered Agent Cole Evans on May 10, 2022. ECF# 6-2.  Following extensions, the Corporate Defendants timely pled in response to Plaintiffs' Complaint.  ECF#s 14-15.

The Corporate Defendants continued to participate in this action until January 3, 2025.  ECF# 132.  By motion dated January 3, 2025, Ashley Jordaan, Scott Meyers, and Owen Davis of Husch Blackwell, LLP moved to withdraw from their representation of all Defendants. ECF# 130.  On January 3, 2025, the Court Granted that motion to withdraw, advising the Defendant LLCs that they could not proceed *pro se* and must engage new counsel by February 5, 2025.

---

[2] While named in the caption as "Kiss Nutraceuticals", that Defendant admits that "Kiss Nutraceuticals is a registered Colorado limited liability company".  ECF# 14 pg. 4 ¶9.  The entity is referenced herein as Kiss Nutraceuticals, LLC.

2

ECF# 132.  The Court advised the Defendant LLCs that "[f]ailure to secure new counsel by this deadline may result in sanctions, including the entry of default judgment."  *Id.*

In an Order dated February 1, 2025, the Court stated that "It has come to the Court's attention that Defendants Kiss Nutraceuticals and Kiss Industries, LLC (together, the "Corporate Defendants") have failed to obtain counsel in accordance with the Court's prior Order132."  ECF# 133.  The Court set a deadline for Plaintiffs to move for the imposition of sanctions or other relief, which has been extended to April 9, 2025.  *Id.*

By Order dated March 4, 2025, the Court Ordered that "Plaintiffs shall have 7 days from the date of the Court's Order resolving the Renewed Motion for Class Certification within which to file a motion for entry of default judgment, and/or for such other relief they believe to be legally appropriate under the circumstances, in light of the Corporate Defendants' continued failure to procure counsel."  ECF# 137.

On March 26, 2025, the Court held a Status Conference at which the Corporate Defendants and Defendant Evans failed to appear.  ECF# 138.  All Defendants had been served with the Minute Order setting the March 26, 2025 Status Conference those Defendants failed to attend.  ECF# 136.

On April 2, 2025, the Court Granted the Plaintiffs' Renewed Motion for Class Certification.  ECF# 143.  That Order appointed the undesigned as class counsel.  *Id* at pg. 39.  No attorney has entered an appearance on behalf of any Defendant.  No attorney has been identified to Plaintiffs as representing any Corporate Defendant.  No attorney has contacted Plaintiffs' counsel of behalf of any Corporate Defendant.  ECF# 145-3, Turner Decl. ¶ 13.

3

The Corporate Defendants remain unrepresented in violation of multiple Court Orders. ECF#s 132, 133. "In federal court, limited liability companies must be represented by counsel." *Touchstone Life Essentials, Inc. v. Healed LLC*, No. 24-CV-03386-PAB, 2025 WL 345299, at *2 (D. Colo. Jan. 30, 2025). "[A] corporation or other business entity can only appear in court through an attorney and not through a non-attorney corporate officer appearing *pro se*." *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 556 (10th Cir. 2001). The Corporate Defendants have failed to defend this action. Plaintiffs have requested that the Clerk enter default against the Corporate Defendants. ECF# 145. By this Motion, the Plaintiffs request that the Court enter a default judgment against the Corporate Defendants in the amount of sum certain $5,153,463.66. The bases for this request are explained below.

## II.     Statement of Facts

This case concerns Defendants' failure to pay overtime wages to the Plaintiff class of workers they misclassified as exempt, independent contractors. Defendants admit that they did not pay overtime wages to any of the class members. *ECF# 116-5, 30(b)(6) Dep. Kiss Nutraceuticals 64:1-17; ECF# 116-10, see also Declaration of Barbara Olvera ¶ 4.*

Record evidence illustrates that the Plaintiff class were not independent contactors, but rather employees entitled to overtime. Defendants are in the business of manufacturing CDB gummy bears, among other products. In Defendants' plant, workers perform basic assembly line tasks, including arranging gummy bears on trays, placing drops of CBD oil on the gummy bears, and packing them for shipment. ECF# 116-1, Soto Dep. 33:8-13; ECF# 116- 2, Lara Dep. 35:5-10; ECF# 116-3, Gamboa Dep. 22:10-23:20.

4

Defendants directed the class members how to do the work. ECF# 116-2, Lara Dep. 54:1-12. The job did not require specialized skills, training or certifications as would an independent contractor's work. ECF# 116- 5, 30(b)(6) Dep. Kiss Nutraceuticals 111:3-21. ECF# 116-2, Lara Dep. 10:20-11:5. ECF# 116-1, Soto Dep. 12:16-23.  When training was given, the class members were able to train on-the-job in a very short time. ECF# 116- 3, Gamboa Dep. 67:22-68:16; 75:14-76:2. Job training could last only a few minutes. ECF# 116-2, Lara Dep. 34:19-35:14; ECF# 116-1, Soto Dep. 35:17-36:15.

Defendants admit that the work the class performed was the primary work of Defendants' business. ECF# 116-5, 30(b)(6) Dep. Kiss Nutraceuticals 111:22-112:4.  To staff their assembly line, Defendants exercised the power to hire and fire class members. ECF# 116-5, 30(b)(6) Dep. Kiss Nutraceuticals 106:16-17; ECF# 116-2, Lara Dep. 19:15-21:7; 55:20-56:7; ECF# 116-1, Soto Dep. 69:23-25.

Defendants set the worker's schedules and made them come in early, and/or stay late, when there were orders to complete. ECF# 116-1, Soto Dep. 38:2-39:17. See also Pl. Ex 3, Gamboa Dep. 45:12-46:6; 71:4-25; ECF# 116-2, Lara Dep. 21:1-18; 25:6-23. Defendants controlled when the workers could leave at the end of the day, and refused workers' requests to leave early. ECF# 116-3, Gamboa Dep. 65:18-22; ECF# 116-2, Lara Dep. 28:19-22; 51:18-52:12. Defendants directed their workers as to work start and stop work times via the WhatsApp messaging application. ECF# 116-3, Gamboa Dep. 69:2-6; ECF# 116- 2, Lara Dep. 25:14-16; ECF# 116-1, Soto Dep. 22:8-20; ECF# 116-8, WhatsApp Message. If a worker didn't show up at the appointed time, Defendants punished them by cutting their shifts. ECF# 116-1, Soto Dep. 22:8-20.

Defendants controlled when workers could take rest and lunch breaks. ECF# 116-1, Soto Dep.71:20-25; ECF# 116-3, Gamboa Dep. 28:1-13; 93:6-18. Even if workers were permitted to take a break at a time of their choosing, Defendants cut their breaks short and made them go back to work. ECF# 116-3, Gamboa Dep. 93:25-95:12.  Defendants directed their employees as to where along the assembly line they were to work.  ECF# 116- 3, Gamboa Dep. 27:2-23.

Defendants paid the class members on an hourly basis and dictated what the wage rate would be. ECF# 116-5, 30(b)(6) Dep. Kiss Nutraceuticals 105:19-106:2; ECF# 116-3, Gamboa Dep. 22:24-23:2; ECF# 116-1, Soto Dep. 62:20-22. Defendants even subjected these purported independent contractors to progressive employee discipline. ECF# 116-11, Employee Warning Document.

The workers did not use equipment that they owned as a contractor would.  They performed all work on Defendants' manufacturing equipment. ECF# 116-5, 30(b)(6) Dep. Kiss Nutraceuticals 105:14-18; ECF# 116-2, Lara Dep. 55:2-5. Defendants maintained employment records for the putative class, including records of each member's hours worked. ECF# 116-5, 30(b)(6) Dep. Kiss Nutraceuticals. 106:24-107:16. Defendants made their workers clock-in via a thumbprint verification system. Id. The workers had no opportunity to make a profit or loss, but simply worked for an hourly wage. Id. 107:17-108:5; ECF# 116-2, Lara Dep. 56:8-23. Nor did the workers make any capital investments into the business. ECF# 116-5, 30(b)(6) Dep. Kiss Nutraceuticals 108:6-8. Defendants hired the workers for permanent positions, not for limited, determined periods of time as an independent contractor would be engaged. ECF# 116-2, Lara Dep. 57:5-15; ECF# 116-3, Gamboa Dep. 26:7-20.

### III.   Argument

#### A.   Plaintiffs Are Entitled to Entry of Default Judgment Against All Defendants.

The Plaintiff class is entitled to the entry of default judgment against the Corporate Defendants pursuant to Fed. R. Civ. P. 55(b).  Entry of default judgment is left to the sound discretion of the trial court.  *Nikwei v. Ross School of Aviation,* 822 F.2d 939, 941 (10th Cir. 1987)("considerable deference is given the trial judge's determination regarding the default judgment since he is the person most familiar with the circumstances of the case and, thus, is in the best position to evaluate the good faith and credibility of the parties at the hearings.") While default judgment is a harsh sanction, it is warranted where, as here:

> the adversary process has been halted because of an essentially unresponsive party.  In that instance the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.  The default judgment remedy serves as such a protection.

*In Re Rains,* 946 F.3d 731, 732-33 (10th Cir. 1991)(quoting *H.F. Livermore v. Aktiengesellschaft Gerbruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).  "[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard." *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983).

Entry of default judgment is proper where, as here, properly served defendants have failed to defend.  *Bolduc v. Bailey*, 586 F. Supp. 896, 899 (D. Colo. 1984).  Plaintiffs are entitled to entry of default judgment against the Corporate Defendants.

7

### B. The Plaintiff Class Is Entitled to Default Judgment in the Amounts Set Forth Below.

#### 1. Plaintiffs Have Proven Their Entitlement to Damages.

The Plaintiffs have proven their entitlement to damages. "The defendant, by his default admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *United States v. Craighead*, 176 Fed. Appx. 922, 924 (10th Cir. 2003)(quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *See also*, *Olcott v. Delaware Flood Co.,* 327 F.3d 1115, 1125 (10th Cir. 2003). The allegations of Plaintiffs' well-pleaded complaint, as supplemented by record evidence specifying hours worked, wage rates and payments received, demonstrate their entitlement to damages.

Plaintiffs have alleged [ECF# 1 ¶¶ 92-95, 100-104, 108-110] and demonstrated that they were statutory employees entitled to overtime wages. Defendants did not pay overtime wages to any class members. ECF# 116-5, 30(b)(6) Dep. Kiss Nutraceuticals 64:1-17. The putative class members regularly worked overtime hours and were uniformly denied overtime pay. ECF# 116-4, February 2021 Master Payroll; ECF# 116-6, Defendants' Wage and Hour Records.

In the course of discovery, Defendants produced PDFs of payroll data detailing the weekly wages paid to class members for work performed in 2021 and 2022 and the hourly rate at which those wages were paid. Ex. 1, Milstein Decl. ¶10. This is not, however, a complete account of the work performed by the class because many class members worked outside 2021 and 2022, but within the statute of limitations at issue. *Id.* Class counsel spent 37.6 hours manually entering data and analyzing Defendants' 2021 and 2022 payroll to calculate the

8

overtime damages owed to the class members.  Ex.1, Milsein Decl. ¶11.  Defendants' payroll showed weekly wages paid and the hourly rate at which those hours were paid. The number of weekly hours worked could be derived by dividing gross wages paid by the hourly rate. *Id.*  The number of overtime hours was simply that number over 40 in a week.  I calculated weekly overtime wages due by multiplying the overtime hours (over 40) by the hourly wage rate * 0.5. The formula is simply:

> Weekly Hrs = Check Total/ Hourly Wage
> Overtime Hrs = Weekly Hrs – 40 Straight Time Hours
> Unpaid Overtime Wages = Overtime Hrs * (Hourly Wage * 0.5)

In this manner, Class Counsel calculated individual weekly overtime damages with respect to a sample of 98 of the 255 identified class members.  Ex. 1, Milstein Decl. ¶ 12.  That large sample showed a weekly average of $117.51 of Unpaid Overtime Wages.  *Id.*  Given the gaps in available payroll records, class counsel applied that $117.51 average weekly unpaid overtime wage amount across all individuals and the entire class period.  *Id.*  In the course of discovery, Defendants provided the start and end date of each class member's employment. *Id.*  Class counsel applied the $117.51 average weekly unpaid overtime wage amount to each of the workweeks in which each class member was employed to calculate the unpaid overtime wages. *Id.*  Calculated in this manner, the 255 class members are due unpaid overtime wages in the amount of $1,224,202.39.  *Id.*  This amount omits any penalty.

Numerous penalties available to the Plaintiff class could enhance the $1,224,202.39 in unpaid overtime wages they are owed.  Ex. 1, Milstein Decl. ¶ 13.  The Colorado Wage Claim Act provides for penalties applicable here. C.R.S.§ 8-4-109(3).  The Denver Minimum Wage Ordinance provides an array of complimentary remedies, stating that "[u]pon prevailing, the

9

aggrieved party shall be entitled to such legal and equitable relief as may be appropriate to fully remedy the violation including, without limitation:  (1) The payment of any wages unlawfully withheld (including amounts that accrued after the filing of the civil action); (2) Interest on unpaid wages and overtime compensation at a rate of twelve (12) percent per annum from the date such wages were first due; (3) A penalty in the amount of one hundred dollars ($100.00) to each worker whose rights under this article were violated for each day that the violation occurred or continued; (4) Liquidated damages in an amount equal up to three times the amount of unpaid wages and overtime compensation in connection with such wages…".  D.R.M.C. Ch. 58, § 58-6(a).   In this case, class counsel limited the penalty included in my class damages calculation to the liquidated damages provision of the Denver Minimum Wage Act. Ex. 1, Milstein Decl. ¶ 13. Class counsel calculated that lone penalty at its maximal "three times the amount of unpaid wages and overtime compensation".  *Id.*  The penalty totals $3,672,607.18.

Each of the statutes the Plaintiff class proceeds under provide for the award of reasonable attorney fees and costs.  C.R.S. § 8-4-110; C.R.S. § 8-6-118; D.R.M.C. Ch. 58, § 58-6(a)(6). Class counsel submits a contemporaneous, itemizes attorney's fee invoice reflecting an additional recoverable lodestar amount of $256,654.09.  Ex. 1, Milstein Decl. ¶¶ 14-18; Ex. 2, Turner Decl. ¶¶ 12-13.  The total default judgment sought inclusive of unpaid overtime wages, liquidated damages, and the attorney's fee lodestar is $5,153,463.66.  *Id* at ¶ 19.

### IV.     Conclusion

For the reasons set forth above, the Court should grant this motion and enter default judgment against the Corporate Defendants in the total amount of $5,153,463.66.

10

Respectfully Submitted,

***/s/ Andrew H. Turner***
Andrew H. Turner
Brandt P. Milstein
MILSTEIN TURNER, PLLC
2400 Broadway - Suite B
Boulder, CO 80304
Telephone: (303) 305-8230
Email: andrew@milsteinturner.com
brandt@milsteinturner.com

*Class Counsel*

### CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing document on Defendants by electronically filing with the Clerk of Court, using the CM/ECF system which will send notification of such filing to all parties *via* e-mail.

I further certify that I have served the foregoing document on the following Defendants by 1st Class U.S. Mail, postage prepaid to:

> Kiss Nutraceuticals, LLC
> c/o Cole T. Evans
> Registered Agent
> 5151 Bannock St Ste 8
> Denver, CO 80216
>
> Kiss Industries, LLC
> c/o Cole Evans
> Registered Agent
> 3222 E. 1st Avenue #329
> Denver, CO. 80206
>
> Cole Evans
> 5151 Bannock St Ste 8
> Denver, CO 80216

11

Grant Dean
6566 Edge View Rd
Castle Pines, CO 80108

This 9th day of April, 2025,

*/s/Andrew H. Turner*
Andrew H. Turner
*Class Counsel*